690 P.2d 1038

**Phyllis Ann SCHELL, wife of Norvin D. Schell, Deceased, Plaintiff-Appellee,**

v.

**BUELL ECD CO., Employer, CNA Insurance Co., Insurer, Defendants-Appellants.**

**No. 7004.**

Court of Appeals of New Mexico.

Aug. 4, 1983.

Certiorari Quashed Nov. 13, 1984.

Victor A. Titus, Faurot & Titus, P.A., Farmington, for plaintiff-appellee.

James B. Payne, Tansey, Rosebrough, Roberts & Gerding, P.C., Farmington, for defendants-appellants.

## OPINION

DONNELLY, Judge.

Appellants (decedent's employer and its insurance carrier) appeal from a judgment awarding death benefits to decedent's widow in a workmen's compensation case. Two issues are raised: whether (1) under the evidence and the law the trial court erred in awarding death benefits resulting from the suicide of the workman, and (2) an award of benefits was improper by reason of the intoxication of the workman.

Decedent was employed as a boilermaker at the Four Corners Power Plant near Farmington. On January 8, 1981, decedent's right leg and ankle were severely injured when a piece of machinery fell on him while he was performing his duties. Appellants paid workmen's compensation benefits to decedent for total disability until March 23, 1981, when he returned to light duty. On May 20, 1981, decedent stopped working again due to a worsening of his condition. He remained totally disabled until August 31, 1981 at which time he returned to light duty for a second time. He became totally disabled again on November 10, 1981. Decedent was paid workmen's compensation benefits during his periods of total disability and received

medical expenses for treatment of his injury.

On January 11, 1982, decedent underwent a fusion on his ankle. While he was still recovering from this operation, decedent became increasingly worried about his ability to return to his former occupation and became increasingly depressed. On the afternoon of March 14, 1982, decedent began drinking and made statements evidencing the pain he was experiencing and his belief he would never recover or be able to perform his former occupation. Later the same night, he committed suicide by a gunshot to his head.

Decedent's widow sought death benefits under the Workmen's Compensation Act. Following trial, the court adopted findings of fact and conclusions of law in favor of the claimant. The trial court specifically found that decedent committed suicide, that to a reasonable medical probability the injury and resulting disability of the workman caused severe depression and borderline psychosis, and that such mental condition proximately caused the workman to commit suicide. The trial court also found that the accidental injuries sustained by the workman proximately resulted in his death within the period of two years following his injury, that all medical expenses for treatment of the injuries received by the workman as a direct and proximate result of the accident on January 8, 1981, had been paid by defendants prior to the time of his death, and that decedent's widow was the sole person entitled to death benefits under the Workmen's Compensation Act.

## I. Suicide of Workman

The issue of whether an employer may be legally liable for the payment of death benefits under the Workmen's Compensation Act for death resulting from suicide is a matter of first impression in this jurisdiction. The Workmen's Compensation Act contains two separate statutory provisions barring recovery under the act where an injury is self-inflicted.

NMSA 1978, § 51–1–11 sets out:

No compensation shall become due or payable from any employer under the terms hereof in [the] event such injury was *occasioned by the intoxication of such workman, or wilfully suffered by him, or intentionally inflicted by himself.* [Emphasis added.]

NMSA 1978, § 52–1–9 provides in applicable part as follows:

The right to the compensation provided by this act * * *, in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

\* \* \* \* \* \*

C. the injury or death is proximately caused by accident arising out of and in the course of his employment *and is not intentionally self-inflicted.* [Emphasis added.]

Defendants contend that the primary objective of the Workmen's Compensation Act is to allow recovery to an injured workman or his dependents for disability proximately resulting from injuries sustained within the scope and course of his employment. They argue that as a matter of law the restrictions imposed under §§ 52–1–9(C) and 52–1–11 bar plaintiff from any recovery herein.

In response, plaintiff urges that the Workmen's Compensation Act clearly enunciates the requirement of finding proximate cause between the work-related injury and the death or disability of the workman. She argues that the trial judge under the evidence herein correctly found that decedent's suicide was the direct and proximate cause of the serious injuries he sustained during the course and scope of his employment.

Among other evidence presented at trial, plaintiff called Dr. John McCarthy, a psychiatrist. Dr. McCarthy testified that he had reviewed the medical reports of decedent's medical history and symptoms and interviewed members of decedent's family and some of his friends; it was a medical

probability that the decedent's injury and its resulting disability caused severe depression and borderline psychosis which caused the workman's suicide. He also testified that, although decedent had been drinking on the day in question, intoxication was not a factor in the suicide. At trial, defendants did not call any expert medical witnesses to rebut or contradict the testimony of plaintiff's medical expert on any issue.

A number of jurisdictions have considered whether a workman's suicide may be compensable under the Workmen's Compensation Act under certain limited circumstances. As noted in *Annot.*, 15 A.L.R.3d 616, 621 (1967):

> Many of the compensation acts expressly exclude injuries which are purposely self-inflicted or intentionally produced by the workman. Consequently, the question of whether suicide is compensable normally arises only if the suicide was committed while the workman was insane, his insanity having arisen out of and in the course of his employment. (Footnotes omitted.)

\* \* \* \* \* \*

All jurisdictions require that a workman's suicide be caused by some mental derangement arising out of and in the course of his employment to be compensable under the workmen's compensation act. However, they disagree as to the degree and manifestations of derangement necessary, the directness of the causal relationship between it and the work-connected injury required, and the type of injury or activity accepted as one which may lead to a compensable suicide.

In general, the courts have formulated three different approaches in dealing with claims involving the suicide of a workman: the Massachusetts or "Sponatski rule," the "chain of causation" rule, and the New York rule. *See generally Annot.*, 15 A.L. R.3d 616, *supra.* The earliest approach was that taken by the Massachusetts Supreme Court in *In re Sponatski*, 220 Mass. 526, 108 N.E. 466 (1915). Under the "Sponatski rule," recovery for the death of a workman is permitted only where the suicide is shown to be the direct result of a physical injury and where the injury results in an insanity of such nature as to cause the workman to take his own life in an uncontrollable impulse or delirium of frenzy without a conscious volition to produce death and without realizing his act of self-destruction.

The Sponatski rule has been criticized in a number of jurisdictions because it incorporates aspects of tort liability based upon fault and elements of the rule of *M'Naghten's Case*, 10 Clark & F. 200, 8 Eng.Rep. 718 (1843), for criminal insanity into the workmen's compensation law. *Brenne v. Department of Industry, Labor & Hum. Rel.*, 38 Wis.2d 84, 156 N.W.2d 497 (1968); *see Graver Tank & Mfg. Co. v. Industrial Commission*, 97 Ariz. 256, 399 P.2d 664 (1965); 1A A. Larson, *The Law of Workmen's Compensation* § 36.22 (1982).

Although a number of courts which originally considered the issue followed the *Sponatski* rule, most have retreated from this test and adopted the "chain of causation" test. *See Brenne, supra; see also Annot.*, 15 A.L.R.3d at 629; Larson, *supra*, at § 36.10. As discussed in *Annot.*, 15 A.L.R.3d at 632:

> The chain-of-causation test was adopted in *Burnight v. Industrial Acci. Com.* (1960) 181 Cal App 2d 816, 5 Cal Rptr 786, despite a statutory prohibition against compensation for "intentionally self-inflicted" injuries. "Intentional" \* \* is not to be equated with "volitional"; there can be no intention to commit suicide if the workman's mind is not sound and he is unable to exercise sound discretion because of a compulsion due to that condition, even though his act might be "volitional." The test is \* \* \* not whether the employee knew what he was doing, but whether the compulsion or impulse to commit suicide was one which he could not resist.

The courts in New York have adopted still another rule which allows death benefits where a compensable injury results in psychosis or mental disease causing de-

rangement other than discouragement, melancholy, or other sane conditions which in turn causes death by suicide. Under the New York rule, proof is required that the injury precipitating the mental derangement was a physical injury. *Delinousha v. National Biscuit Co.*, 248 N.Y. 93, 161 N.E. 431 (1928); *Reinstein v. Mendola*, 39 A.D.2d 369, 334 N.Y.S.2d 488 (1972); *see Soileau v. Travelers Insurance Company*, 198 So.2d 543 (La.App.1967).

The Arizona Supreme Court in *Graver Tank, supra*, considered a case where a workman, after suffering a work-related injury which resulted in great pain, underwent a subsequent operation which failed to alleviate the excruciating pain suffered; the workman thereafter shot and killed himself. The court found the Sponatski rule inconsistent with the basic purposes of the Workmen's Compensation Act and held:

> We believe the better rule to be that where the original work-connected injuries suffered by the employee result in his becoming devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, such as severe pain and despair, the self-inflicted injury cannot be considered "purposeful" within the meaning and intent of the Workmen's Compensation Act. *Whitehead v. Keene Roofing Co.*, 43 So.2d 464 (Fla.1949).

The court in *Graver Tank, supra*, formulated a rule describing the factors which would permit recovery under the Workmen's Compensation Act, even where a workman took his own life, and held that an act of suicide is not always to be considered an independent intervening cause of the death or injury of the workman. The court quoted with approval from *Whitehead, supra*, that

> "(w)hile it may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an *act* intervening between the injury and the death, and part of an unbroken chain of events

from the injury to the death, and not a *cause* intervening between the injury and death." 43 So.2d at 465.

The psychiatrist called by the plaintiff, Dr. McCarthy, testified that based upon a reasonable medical probability the original injury sustained by the workman was the proximate cause of the suicide. This testimony was uncontradicted by other expert medical testimony.

■ We agree with the rationale stated by Judge Musgrove in the memorandum opinion written by him which accompanied his trial court decision:

> The ultimate question to be answered is, did the original injury cause the suicide based on reasonable medical probability? Each case will have to be decided on its own set of proven facts. Here, the doctor [McCarthy] stated his opinion as to causation and the underlying facts on which he based his conclusions. It was not inherently improbable. The testimony was uncontradicted.
>
> \* \* \* \* \* \*

Defendants argue that the act of suicide was intentional and that Sec. 52–1–11 precludes recovery. However, once causation has been established, as it has here, the act of suicide cannot then be said to be wilful or intentional within the meaning of the statute since its causation ultimately relates back to the original injury rather than existing as an independent and intervening cause.

The decision of Judge Musgrove is in accord with the majority rule noted in Larson, *supra*, at § 36.00. The author there notes that "[s]uicide under the majority rule is compensable if the injury produces mental derangement and the mental derangement produces suicide."

The rule articulated in *Graver Tank, supra*, is an enlightened approach to the factual issues raised here and sets forth the appropriate legal test to determine whether a self-inflicted injury resulting in the death of a workman should be compensable under our Workmen's Compensation Act. Arizona, like New Mexico, has two express

statutory prohibitions against the allowance of compensation benefits where an injury was purposely self-inflicted.[1]

■ Statutory restrictions barring recovery where an injury is self-inflicted are generally interpreted not to preclude recovery where the original work-related injury sustained by the workman was accidental and otherwise compensable and the injury produced a mental disability which rendered the subsequent act of suicide of the workman non-purposeful. Absent evidence of mental derangement and causation, however, self-inflicted injuries by a workman are held to be non-compensable. *See Wood v. Industrial Commission,* 108 Ariz. 50, 492 P.2d 1157 (1972).

■ Medical evidence must be presented to establish the causal connection between the work-related injury and the death when cause is disputed; NMSA 1978, § 52–1–28; this burden of establishing the required causal nexus is upon the plaintiff. *Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977).

Similarly, California limits recovery in workmen's compensation cases where an injury is intentionally self-inflicted or where the employee wilfully and deliberately caused his own death.[2] California, however, permits recovery in compensation cases where the death of the workman is shown to be the result of an uncontrollable impulse proximately caused by an earlier suffered compensable injury even though the suicide victim had sufficient mental capacity to know what he was doing. *Vandagriff v. Workmen's Compensation Appeals Board,* 265 Cal.App.2d 854, 71 Cal. Rptr. 630 (1968); *Burnight v. Industrial Accident Commission, supra; Redmond v. Workmen's Compensation Appeals Board,* 36 Cal.App.3d 302, 111 Cal.Rptr. 530 (1973).

■ In accordance with the rule articulated in *Graver Tank, supra,* appellee established (1) the occurrence of an original work-related injury and resulting disability

to the workman within the scope and course of decedent's employment; (2) subsequent mental derangement of the worker; (3) the death of the workman by suicide; and (4) that the death of the workman was directly and proximately attributable to the original work-related compensable injury sustained by decedent. The trial court's findings and conclusions were supported by substantial evidence and were not contrary to law.

## II. Defense of Intoxication

The trial court found that earlier on the day of decedent's death he had spent several hours drinking beer in a bar. The evidence also indicated that prior to January 8, 1981, when the workman sustained his original injury, he often drank a six pack or more of beer on days when he was not working. The medical examiner's report which was admitted into evidence indicated that decedent at the time of his death had a blood alcohol content of .207 percent. The trial court took judicial notice of NMSA 1978, § 66–8–110 (Cum.Supp.1982), which provides that an individual is presumed to be under the influence of alcohol if his blood alcohol contains one-tenth of one percent or more.

■ Section 52–1–11, *supra,* imposes a statutory defense in workmen's compensation cases where the injury "was occasioned by the intoxication of such workman." In *Parr v. New Mexico State Highway Department,* 54 N.M. 126, 215 P.2d 602 (1950), it was held that in cases wherein the defense of intoxication is asserted the defendant "is charged with a two-fold burden, that of proving intoxication, and that intoxication was the cause of the injury." To prove the defense of intoxication, evidence of actual intoxication as the cause of the injury must be shown. *Id.; see Martinez v. Earth Resources Company,* 87 N.M. 278, 532 P.2d 207 (Ct.App.1975); *see also* Larson, *supra,* at § 34.33. Dr. McCarthy was cross-examined on the ques-

---

1. Ariz.Rev.Stat.Ann. § 23–1021 (1971).

2. Cal.Labor Code § 3600 (West 1971, 1983 P.P.).

tion of whether intoxication was the cause of the suicide. He testified that alcohol ingestion was not the cause of decedent's death; in his opinion, decedent's mental disorder was not related to intoxication at the time of the suicide.

◼ Uncontradicted medical testimony as to the causal connection between a work-related injury and the subsequent death of a workman is conclusive upon the court as fact finder. *Casaus v. Levi Strauss & Co.*, 90 N.M. 558, 566 P.2d 107 (Ct.App.1977). There is no contradictory medical testimony to challenge this evidence.

The judgment of the trial court is affirmed. Appellee is awarded $2,500.00 for attorneys fees on appeal plus any costs incurred herein.

IT IS SO ORDERED.

WOOD and LOPEZ, JJ., concur.