823 P.2d 327

**The ESTATE OF Fred Larry MITCHUM, Deceased, Claimant–Appellant,**

v.

**TRIPLE S TRUCKING and United States Fidelity and Guaranty, Respondents–Appellees.**

**No. 12639.**

Court of Appeals of New Mexico.

Oct. 18, 1991.

Certiorari Denied Nov. 25, 1991.

86

Victor A. Titus, Farmington, Bruce P. Moore, Albuquerque, for claimant-appellant.

Nancy Augustus, Seth V. Bingham, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for respondents-appellees.

## OPINION

DONNELLY, Judge.

Worker's estate appeals from a judgment and order dismissing his claim for workers' compensation benefits based upon a finding by the workers' compensation judge (WCJ) that the accidental injury sustained by worker was caused by his intoxication. We discuss: (1) whether employer was required to establish its affirmative defense

of intoxication by the testimony of a qualified health care provider; (2) whether the WCJ's findings that intoxication was the proximate cause of worker's injury are supported by substantial evidence in the record as a whole; and (3) whether the WCJ erred in admitting evidence of worker's blood-alcohol test. We also address the effect of worker's death during the pendency of this appeal. We affirm.

FACTS

Worker was employed as a water truck driver for Triple S Trucking (employer). His supervisor, Jackie Hales, testified that he telephoned worker on July 29, 1989, and requested that he report to work on the night shift. Hales stated that worker admitted he was intoxicated and was not able to come to work.

The following morning, worker reported for work at approximately 11:45 a.m. and was told to clean out the tank on a water truck. A co-worker, Edward Heald, testified that worker came into the office looking tired and glassy-eyed, and asking if Heald knew of any bars that were open. Heald stated that worker then drove his truck into a wash bay of the service area and turned on the spray pump. Approximately fifteen minutes later, Heald went outside and found worker lying on the ground on the right side of the truck, unconscious, and bleeding from a head injury.

Worker was taken immediately to the hospital by ambulance. Dr. Welch, who administered emergency treatment, noted that upon his arrival, worker had the "smell of alcohol on his breath." At the time of the accident, employer had established a policy forbidding the possession or use of illegal drugs by employees on company property and requiring employees to submit to searches for such substances as a condition of continued employment.

During the time worker remained unconscious and was being treated at the hospital, Jerry Lacey, employer's safety supervisor, informed emergency-room doctors that alcohol might have been involved in the accident and suggested that a blood-alcohol test be performed. A blood sample was withdrawn from worker and several tests, including a blood-alcohol test, were performed. As shown by worker's answers to requests for admissions, the blood-alcohol test results indicated that he had a blood-alcohol level of 0.141 or 140.7 milligrams of alcohol per deciliter of blood.

Examination of the accident scene immediately after the accident revealed that the water truck worker had been cleaning had muddy footprints on top of the tank leading from the ladder to the rear of the truck. From these footprints, extending down the right side of the tank, were streaks of mud and skid marks. A scuff mark appeared on the catwalk area which surrounds the base of the tank. Blood from worker's head was found immediately beneath the muddy skid marks on the side of the tank and on the catwalk. At the time of the accident, worker was wearing boots which were muddy and slick.

At the hearing before the WCJ, worker testified that on the morning of the accident he arrived at work shortly before noon and was instructed to clean out the tank of his truck so that clean water could be hauled to a well site. He stated that he drove his truck into the shop and took off the dome of the tank in order to get inside. He also stated that when he climbed into the tank to fix a gauge his leather-soled cowboy boots became slippery from the paraffin and oil which covered the tank's interior walls. Worker testified that thereafter he drove his truck into the wash bay in order to clean out the tank. He further stated that he believed he had climbed up the ladder to the tank and stood on its top, when he slipped and fell. Worker admitted that he had consumed a half-quart bottle of vodka the evening prior to the accident, but he denied that he was intoxicated at the time of the accident and stated that he thought that the blood-alcohol test results which were attributed to him had been mixed up with someone else's.

Following a hearing, the WCJ denied worker's claim for benefits and entered a judgment reciting that it "finds and concludes that the Claim of [worker] is barred by § 52-1-11, NMSA (1978 Comp.) [be-

cause] his injury was occasioned by his intoxication * * *."

## PROCEDURAL POSTURE

█ We address as a threshold matter the procedural posture of this case following worker's death on June 25, 1991, during the pendency of this appeal. After worker's death, his counsel filed a motion to substitute his estate to prosecute this appeal on the ground that the "cause of action for benefits and medicals incurred prior to death are items of the estate." Employer has not disputed this and, therefore, worker's estate is entitled to be substituted for worker pursuant to SCRA 1986, 12–301(B) for the purpose of prosecuting the appeal as it relates to the benefits incurred prior to death. *See Holliday v. Talk of the Town, Inc.,* 102 N.M. 540, 697 P.2d 959 (Ct.App.1985).

## PROOF OF INTOXICATION

Under its first and second issues raised on appeal, worker's estate challenges both the admissibility of the evidence of worker's alleged intoxication and the sufficiency of the evidence to support the finding adopted below determining that his injury was occasioned by his intoxication. We discuss both issues jointly.

The estate argues that in order to bar a worker's claim for compensation benefits based upon the defense of intoxication, evidence must be presented establishing that worker was intoxicated and that the intoxication was a proximate cause of the injury. The estate also contends that, because ingestion of alcohol affects individuals differently, under NMSA 1978, Section 52–1–11 (Repl.Pamp.1991), expert medical testimony is necessary to prove that worker's alleged intoxication proximately caused his accident. Section 52–1–11 provides in applicable part: "No compensation shall become due or payable from any employer under the terms of the Workers' Compensation Act ... in event such injury was occasioned by the intoxication of such worker * * *."

As observed in 1A A. Larson, *The Law of Workmen's Compensation*, Section 34.31 (1990), the various state legislatures, in enacting provisions recognizing intoxication as a bar to a worker's claim of disability, have generally followed one of three different approaches regarding the degree of causation required to establish such an affirmative defense. Some states have adopted statutes providing that intoxication is a defense without requiring proof that intoxication was in fact a cause of the injury. A majority of the states recognize the defense when proof of a causal relation is established between the injury and the worker's intoxication, three of which, including New Mexico, provide that intoxication is an affirmative defense to a worker's compensation claim where the employer proves that the worker's injury was " 'occasioned by' " intoxication. *Id.* at 6–102 to –103. A third group of states require that, in order to establish such defense, proof of the worker's intoxication must be shown to constitute the "sole," "primary," or "direct cause" of his injury. *Id.* at 6–103 to –104.

█ Scrutiny of Section 52–1–11 indicates that our legislature, in enacting legislation establishing the affirmative defense of intoxication, followed the approach taken by a majority of states requiring proof that the worker's intoxication constituted a proximate cause of his or her injury. *Parr v. New Mexico State Highway Dep't,* 54 N.M. 126, 215 P.2d 602 (1950). Under our statute, proof of the worker's intoxication need not be shown to be the sole cause of the injury, but only a contributing cause. *See Martinez v. First Nat'l Bank of Santa Fe,* 107 N.M. 268, 755 P.2d 606 (Ct.App. 1987); *see also* SCRA 1986, 13–305 (Repl. 1991); *Smith v. Workers' Comp. Appeals Bd.,* 123 Cal.App.3d 763, 176 Cal.Rptr. 843 (1981) (absent any language in the applicable statutes indicating otherwise, legislatures must have intended the ordinary tort formula of causation to apply to the employer's burden of establishing that the worker's injury was caused by his intoxication). Thus, in order to establish the affirmative defense of intoxication, an employer must present evidence satisfying a dual requirement indicating (1) that the worker was intoxicated at the time of his or her accident, and (2) that such intoxi-

cation was a proximate cause of the resulting injury. *Parr v. New Mexico State Highway Dep't; Salazar v. City of Santa Fe,* 102 N.M. 172, 692 P.2d 1321 (Ct.App. 1983); *Schell v. Buell ECD Co.,* 102 N.M. 44, 690 P.2d 1038 (Ct.App.1983).

■ Examination of the language of Section 52–1–11 also disposes of the estate's argument that such statute must be read in conjunction with NMSA 1978, Section 52–1–28 (Repl.Pamp.1991), necessitating that the employer establish through the testimony of an approved health care provider that worker's injury was causally related to his alleged intoxication. In adopting Section 52–1–11, the legislature omitted any requirement that the defense of intoxication be established only through the testimony of an approved medical health care provider. The estate argues, however, that Section 52–1–28 specifies that where an employer denies that a worker's alleged disability is a natural and direct result of an accident, "the worker must establish that causal connection as a probability by expert [medical] testimony * * *." It seeks to extend this language so as to impose a similar burden upon respondents when asserting the affirmative defense of intoxication. We find this argument unpersuasive. We discern no legislative intent to condition proof that a worker's accident was caused by his or her intoxication upon expert medical testimony. Absent language or evidence of legislative intent to the contrary, we read the statute as permitting proof of worker's intoxication and the causal relation between his intoxication and accident by other evidence. *See Carter v. Mountain Bell,* 105 N.M. 17, 727 P.2d 956 (Ct.App.1986).

■ Our interpretation is consistent with the general rule that proof of an individual's intoxication may be established by circumstantial evidence. *See Cantrell v. W & C Contracting Co.,* 112 N.M. 609, 817 P.2d 1251 (Ct.App.1991) (substantial evidence based on admissions of the worker, circumstances surrounding accident, the investigating officer's investigation, and evidence found at scene of accident existed supporting finding of workers' compensation judge that the worker was intoxicated at time of accident and that his intoxication was the proximate cause of his injuries); *see also City of Portales v. Shiplett,* 67 N.M. 308, 355 P.2d 126 (1960) (investigating officer's observations of the defendant's driving the wrong way on a one-way street and the officer's testimony that the defendant's breath smelled of alcohol, that he staggered when walking, that he talked and used the phone with difficulty, and that he was intoxicated held to constitute substantial evidence to support conviction for DWI); *State v. Greyeyes,* 105 N.M. 549, 734 P.2d 789 (Ct.App.1987) (circumstantial evidence sufficient to sustain the defendant's conviction for DWI). Except as required by Section 52–1–28, evidence essential to establish a claim of a party is not required to be established by direct evidence, but may be established by reasonable inferences arising from proven facts. *See Ensley v. Grace,* 76 N.M. 691, 417 P.2d 885 (1966). The estate cites to other evidence in the record tending to show that other factors could have caused or contributed to worker's accident rather than his alleged intoxication. This argument seeks to reargue the estate's version of the facts and to disregard the evidence corroborating respondents' contention that worker's intoxication was a contributory factor causing his accident.

■ The estate also argues that the evidence was insufficient to support the WCJ's finding that worker was intoxicated and that his intoxication occasioned his accident. In reviewing challenges to the sufficiency of the evidence in appeals from administrative decisions of a WCJ, we apply the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). Under the whole record standard of review, the reviewing court examines all of the evidence, both favorable and unfavorable, bearing upon the key findings adopted below in order to determine whether there is substantial evidence to support the administrative decision; this court, however, cannot substitute its judgment for that of the fact-finder or reweigh the evidence. We

review the whole record to determine whether it contains sufficient credible evidence which a reasonable mind might accept as adequate to support the conclusion reached. *See id.; see also Sosa v. Empire Roofing Co.*, 110 N.M. 614, 798 P.2d 215 (Ct.App.1990). This court's function in reviewing a decision of a WCJ is not to determine whether evidence contained in the record would support a contrary finding; rather, it is whether scrutiny of the whole record indicates the requisite evidence to support the decision entered below. *Tallman v. ABF (Arkansas Best Freight).*

■ Applying the above standard to the evidence herein, we conclude that the WCJ's finding that worker was intoxicated at the time of his accident and that his intoxication contributed to his accident is supported by requisite evidence. Evidence contained in the record indicates that muddy footprints were found on top of the tank on the water truck and muddy skid marks appeared on the side of the tank directly above the location where worker was found lying on the ground. The soles of worker's boots were muddy and slick. Worker's own testimony indicated that he had climbed up on top of the water tank just prior to his accident. Worker admitted that there was no need to walk on top of the tank in order to clean it out. Witnesses testified that the routine procedure for cleaning tanks did not involve walking on top of the tank and that the hose used for cleaning could be inserted into the tank opening used for cleaning from a position on the ladder. The footprints and skid marks found on top of the tank were not located near the ladder used to access the opening in the tank used for cleaning, but instead appeared toward the rear of the tank. Testimony of worker's supervisor and the company safety director indicated it was unnecessary to stand on top of the truck to clean the water tank; one need only open the drain at the bottom of the tank and then flush the contents by inserting the pressure nozzle of the water hose into the opening of the tank located next to the ladder.

Worker admitted that on the night before the accident he consumed a half-quart bottle of vodka which caused him to report to his supervisor that he was too intoxicated to work. The evidence also indicated that a number of empty beer cans were found in his truck on the morning of the accident, that worker's breath smelled of alcohol when he was examined in the medical center emergency room, that he had a record of prior alcohol abuse, and that a blood-alcohol test taken shortly after he arrived at the hospital indicated that worker had a blood-alcohol level of 0.141. Dr. Jimmy C. Standefer, a forensic toxicologist, testified that worker's degree of intoxication would have contributed to his falling from the truck.

■ After a reply brief was filed on behalf of worker, his counsel also submitted a supplemental brief seeking to argue issues not raised in his docketing statement or his brief-in-chief. His supplemental brief argued that Section 52–1–11 (defense of intoxication) has been superseded by NMSA 1978, Section 52–1–12 (Repl. Pamp.1991), permitting an affirmative defense to be asserted where an employer establishes that worker's accident " 'was *occasioned solely* ' " by his use of a " 'depressant, stimulant or hallucinogenic drug as defined in the New Mexico Drug[, Device] and Cosmetic Act [Chapter 26, Article I NMSA 1978] * * *.' " (Emphasis in original.) Examination of these statutes, we conclude, indicates that Section 52–1–11 was not modified by the provisions of Section 52–1–12 so as to preclude respondents' reliance upon the defense of intoxication. Moreover, this issue was not argued below and was raised for the first time in the supplemental brief. A reviewing court will decline to consider nonjurisdictional issues raised for the first time on appeal and which were not argued or presented to the trial judge. *See Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 698 P.2d 887 (Ct. App.1985).

## ADMISSIBILITY OF TEST RESULTS

■ Worker's final argument asserts that the WCJ erred in admitting evi-

dence of his blood-alcohol test results, because the test sample was drawn while he was unconscious and respondents failed to present evidence that the test was necessary in order to diagnose or treat worker for his injuries. Worker also argues that a prior written consent given by him to his employer authorizing employer to conduct searches for illegal drugs was unlawful, and that the taking of the blood sample while he was unconscious amounted to a battery and an unlawful search and seizure requiring suppression of the test results. Our review of the record fails to disclose any error on the part of the WCJ in the admission of the results of the blood-alcohol test. Because the exclusionary rule does not apply in civil cases, the method by which the blood sample was obtained, if illegal, should be addressed in a separate action. *Sweenhart v. Co–Con, Inc.,* 95 N.M. 773, 626 P.2d 310 (Ct.App.1981). In any event, there was conflicting evidence on the desirability of the blood sample for medical purposes and the written consent on which worker relies applies to illegal drugs and not alcohol. We find no error in the admission of this evidence.

■ The estate also challenges Dr. Standefer's qualifications to testify concerning the causal effect between the quantity of alcohol found in worker's system and his resulting accident. Worker failed to object to Dr. Standefer's qualifications either at the time his deposition was taken or at trial. Absent a timely objection properly alerting the WCJ to this issue at trial, it cannot be asserted for the first time on appeal. SCRA 1986, 11–103; *see also Poorbaugh v. Mullen,* 99 N.M. 11, 653 P.2d 511 (Ct.App.1982).

■ Lastly, the estate argues that the results of worker's blood test were inadmissible because respondents failed to establish a proper chain of custody from the time the sample was taken to the point when it was admitted into evidence. We disagree. The admission or rejection of evidence is a matter within the sound discretion of the WCJ. *Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 703 P.2d 925 (Ct.App. 1985). Here, the record indicates that after

the test sample was drawn it was marked with worker's name and subsequently tested by a laboratory technician. Dr. Standefer testified that he reviewed the deposition of Frank Funk, a medical technologist, who drew the blood sample from worker. He stated that the manner in which the blood sample was taken and the blood-alcohol test performed was proper and confirmed that the sample tested had been in fact taken from worker. Under these circumstances, we find no error in the admission of test results. It is the role of the WCJ to resolve conflicts in the evidence to determine whether a proper foundation has been established and to resolve questions of admissibility. *See Baum v. Orosco,* 106 N.M. 265, 742 P.2d 1 (Ct.App.1987).

CONCLUSION

The decision of the WCJ is affirmed. IT IS SO ORDERED.

MINZNER and PICKARD, JJ., concur.