# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __June 10, 2015_____

**NO. 33,813**

**ISABEL ARMENTA, Personal Representative**
**for ESTATE OF MANUEL ARMENTA, Deceased,**

      Plaintiff-Appellant,

v.

**A.S. HORNER, INC., a New Mexico corporation,**
**JOHN DOE I and JOHN DOE II,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Law Office of Mel B. O'Reilly, LLC
Mel B. O'Reilly
Albuquerque, NM

for Appellant

Johnson Law Firm, L.C.
Thomas L. Johnson
Andrew L. Johnson
Albuquerque, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

{1}     In this appeal from the grant of summary judgment to A.S. Horner, Inc. (Defendant), we address whether there exist disputed material facts as to (1) whether the Workers' Compensation Act provides the exclusive remedy for Isabel Armenta's claim, and (2) whether Defendant negligently entrusted one of its vehicles to Manuel Armenta (Manuel), Plaintiff's husband and decedent. We reverse.

**BACKGROUND**

{2}     Isabel Armenta, (Plaintiff), personal representative of the estate of her husband, Manuel, brought suit against Manuel's employer, Defendant, for negligent entrustment after Manuel was killed in a single-car accident while driving Defendant's vehicle. The undisputed facts leading to Manuel's death are as follows. Manuel and a number of other workers were sent to Springer, New Mexico, to work on road maintenance on I-25. Defendant arranged for motel rooms for some of its workers, including Manuel, while they were in Springer. During the last week of work in Springer, Defendant provided a Chevy Suburban vehicle to transport some of the workers from Albuquerque to Springer.

{3}     Because Manuel had been convicted for driving while intoxicated in 2001, Defendant's safety director had determined that Manuel would not be permitted to

drive Defendant's vehicles, and he was listed on Defendant's "do not drive" list. Nevertheless, although the parties dispute whether Manuel was issued the Suburban in Albuquerque, they agree that at some point Manuel drove the vehicle after it was picked up from Defendant's facility. They also agree that after work on the day of the accident, Manuel drove the Suburban from the motel to the grocery and liquor stores and returned with supplies for a barbecue with the other employees. The employees at the motel, including Manuel's supervisor, had pitched in money to purchase these supplies. Both Manuel's supervisor and a superintendent employed by Defendant knew that Manuel had driven the Suburban to or while in Springer. The superintendent had advised Manuel in the week before the accident that Defendant's vehicles were supposed to be parked after work hours, except that they could be used to pick up supplies needed for the night. In addition, on the evening of the accident, after eating dinner with the employees and as he was leaving for his room, Manuel's supervisor told the employees, including Manuel, "to drink moderately and to not leave [the motel]."

{4}     In spite of this warning, Manuel and another employee left the motel in the Suburban headed toward Raton. Manuel was killed in an accident about five miles north of Springer on I-25. Manuel's blood alcohol concentration (BAC) was .23 at the time of his death.

**DISCUSSION**

{5}     Defendant argued in the motion for summary judgment that Plaintiff's claims "are barred by the exclusivity provisions of the Workers' Compensation Act" or, alternatively, "Plaintiff cannot meet the requisite evidentiary standard of gross negligence and reckless disregard set forth in *Sanchez v. San Juan Concrete Co.*, 1997-NMCA-068, 123 N.M. 537, 943 P.2d 571." It is not clear from the district court's order on which basis summary judgment was granted. Defendant points to the district court's oral rulings as evidence that summary judgment was granted on the ground that the Workers' Compensation Act was Plaintiff's exclusive remedy. But "[a district] court's oral statements as to the basis for its ruling, made before judgment is entered, and not embodied therein, cannot be considered part of the judgment." *In re Adoption of John Doe*, 1982-NMCA-094, ¶ 49, 98 N.M. 340, 648 P.2d 798. We therefore consider whether summary judgment is appropriate under either theory advanced by Defendant.

**A.     Workers' Compensation**

{6}     Defendant argues that the Workers' Compensation Act (the Act) provides the exclusive remedy for Plaintiff's claim because Manuel was a traveling employee covered by the Act at the time of the accident. *See* NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2013). Generally, "the Act makes workers' compensation

benefits the worker's exclusive remedy for all accidental injuries." *Salazar v. Torres*, 2007-NMSC-019, ¶ 11, 141 N.M. 559, 158 P.3d 449; *see* § 52-1-9; *see also* § 52-1-6(E) ("The Workers' Compensation Act provides exclusive remedies."). Section 52-1-19 precludes compensation under the Act for injuries suffered while going to work or returning home from work. This provision is known as the "going-and-coming rule." *Ramirez v. Dawson Prod. Partners, Inc.*, 2000-NMCA-011, ¶ 7, 128 N.M. 601, 995 P.2d 1043. The exception to the going-and-coming rule invoked by Defendant is known as the "traveling-employee exception." *Id.* (internal quotation marks omitted).

{7} Under the "traveling-employee exception," "[t]he general rule is that an employee whose work entails travel away from the employer's premises is, in most circumstances, under continuous workers' compensation coverage from the time he leaves home until he returns." *Id.* ¶ 11 (internal quotation marks and citation omitted). "The rationale behind the traveling[-]employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels." *Id.* ¶ 12 (internal quotation marks and citation omitted). A traveling employee is one who travels to various locations as an integral part of his or her work. *Id.* ¶ 11.

4

{8}	Since the exception applies during the entire time the employee is traveling, it necessarily encompasses injuries incurred while the employee is not actually working, such as when the employee is engaged in leisure or recreational activities. *Id.* ¶ 13. However, "one seeking compensation for an injury must still demonstrate that the injury arose out of and in the course of employment." *Id.* ¶ 14 (internal quotation marks and citation omitted); *see* § 52-1-9(B). As it pertains to leisure and recreational activities by traveling employees, this requirement is "met if the traveling employee was injured while engaging in an activity that was both reasonable and foreseeable[,]" *id.* ¶ 15, and if that activity is not "conducted in an unreasonable or unforeseeable manner." *Id.* ¶ 16. Finally, the activity "must confer some benefit on the employer; . . . it must be reasonably related or incidental to employment." *Id.* "The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee." *Id.* ¶ 17.

{9}	A number of factors define whether a traveling employee's activity falls within the reach of the Act. These include "whether the injury takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Chavez v. ABF Freight Sys., Inc.*, 2001-NMCA-039, ¶ 11, 130 N.M. 524, 27 P.3d 1011 (internal quotation marks and citation omitted). The *Chavez* Court

stated the factors as "whether the activity was reasonable and foreseeable; whether the injury occurred during a distinct departure from employment for a personal errand; whether the activity was conducted in an unreasonable or unforeseeable manner; and whether the activity giving rise to the injury conferred some benefit on the employer." *Id.; see also Rodriguez v. Permian Drilling Corp.*, 2011-NMSC-032, ¶ 14, 150 N.M. 164, 258 P.3d 443 (listing additional factors). These factors "represent an attempt to draw the line between conduct reasonably related to employment and conduct that is so foreign to and removed from the employee's usual employment as to constitute an abandonment thereof." *Chavez*, 2001-NMCA-039, ¶ 12 (alteration, internal quotation marks, and citation omitted).

{10} Instead of disputing the basic facts related to the traveling-employee exception, Defendant simply argues that the exception applies and, therefore, the Act is Plaintiff's exclusive remedy. For the most part, Plaintiff does not contest that Manuel was a traveling employee. Rather, Plaintiff argues that Manuel was not in the scope and course of employment when the accident occurred. Plaintiff also argues that Manuel's conduct was unreasonable and therefore did not fall within the type of leisure activities encompassed by the Act. Although whether an employee is acting within the course of employment for purposes of the traveling-employee exception is generally a question of fact, when the relevant facts are undisputed an appellate

6

court may resolve the issue as a matter of law. *See City of Santa Fe v. Hernandez*, 1982-NMSC-036, ¶ 6, 97 N.M. 765, 643 P.2d 851 (stating that an appellate court may determine whether an employee was in the scope of employment as a matter of law based on undisputed facts); *Flavorland Indus., Inc. v. Schumacker*, 647 P.2d 1062, 1066 (Wash. Ct. App. 1982) (stating that "[w]hether [the decedent's] intoxication constituted an abandonment of his employment was for the jury to decide"). We agree with Plaintiff that given the undisputed facts here, Manuel was not within the course of employment when he left the motel in the Suburban in an intoxicated state.

{11}     First, the parties agree that Manuel was headed to Raton, that Defendant had no business interests in Raton, and that Manuel was not instructed to go to Raton and was, in fact, instructed not to leave the motel. Indeed, Defendant agrees that Manuel "took the vehicle to party in Raton." Thus, there was no reason related to his employment for Manuel to be driving the Suburban at all. Second, there is also no dispute that Manuel had been drinking alcohol before he got in the Suburban, that he was intoxicated while driving, and that an autopsy after the accident found that Manuel's BAC was .23. Even if Manuel's decision to take the vehicle for a ride could be considered foreseeable and reasonable conduct under the traveling-employee exception, doing so under the significant influence of alcohol was not reasonable. *Ramirez*, 2000-NMCA-011, ¶ 16 (agreeing with other courts holding that "injury

7

incurred in an otherwise reasonable and foreseeable recreational activity will not be compensable if the activity was conducted in an unreasonable or unforeseeable manner"); *cf. Estate of Mitchum v. Triple S Trucking*, 1991-NMCA-118, ¶ 18, 113 N.M. 85, 823 P.2d 327 (holding that the evidence, including a BAC of .141, the employee's admission that he had been drinking the night before the accident, beer cans found in his truck, and testimony that he smelled of alcohol, was sufficient to show that the employee was intoxicated); *see* NMSA 1978, § 66-8-102(C)(1), (D)(1) (2010) (stating that it is unlawful to drive with a BAC of over .08 and that driving with a BAC of over .16 constitutes aggravated driving while intoxicated). Furthermore, no benefit can have been conferred on Defendant by Manuel's drinking excessively. *See Ramirez*, 2000-NMCA-011, ¶ 16 (stating that "the activity giving rise to the injury must confer some benefit on the employer"). We conclude that under these facts, Manuel was not within the course of his employment at the time of the accident. *Cf. Fernandez v. Lloyd McKee Motors, Inc.*, 1977-NMCA-045, ¶ 4, 90 N.M. 433, 564 P.2d 997 (holding that an employee was not in the scope of his employment where the employee was driving his employer's vehicle while intoxicated, was not pursuing the employer's business, and did not have permission to drive the vehicle at that time); *Phelps v. Positive Action Tool Co.*, 497 N.E.2d 969, 971 (Ohio 1986) (stating that "voluntary intoxication which renders an employee incapable of

performing his work is a departure from the course of employment [and that] when the employee is injured in that condition, his injury does not arise out of his employment" and holding that an employee with .21 percent BAC was "grossly intoxicated"); *Am. Safety Razor Co. v. Hunter*, 343 S.E.2d 461, 463 (Va. Ct. App. 1986) ("An employee may abandon his employment by reaching an advanced state of intoxication which renders the employee incapable of engaging in his duties.")[1]; *see generally* 3 A. Larson, Larson's Workers' Compensation Law, § 36.02 (2014). Hence, the Act does not apply to Plaintiff's claim. To the extent the district court granted summary judgment on this basis, we reverse.

**B.    Negligent Entrustment**

{12}    We turn next to whether summary judgment could properly be granted on Plaintiff's negligent entrustment claim. We begin with an overview of the law of negligent entrustment. New Mexico has adopted the general definition of negligent

---

[1]We note that *Fernandez*, *Phelps*, and *American Safety Razor Co*. did not address the course of employment question in the context of the traveling-employee exception, and that the analysis in those cases hinged on whether the employee could carry out his or her duties despite being intoxicated. Here, Manuel was not engaged in carrying out his duties. Consequently the facts in these cases are not directly apposite. Nevertheless, we cite these cases for the general principle that severe intoxication can constitute conduct "so foreign to and removed from the employee's usual employment as to constitute an abandonment thereof." *Chavez*,2001-NMCA-039,¶12 (alteration, internal quotation marks, and citation omitted). Citation to these cases cannot be read to limit our general case law concerning the effect of intoxication on compensability under the law.

entrustment from the Restatement (Second) of Torts. *See Hermosillo v. Leadingham*, 2000-NMCA-096, ¶ 19, 129 N.M. 721, 13 P.3d 79. Section 308 states that

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965). Consistent with this definition, "the burden is upon the plaintiff to establish that [t]he motor vehicle was driven with the permission . . . of the defendant[; t]he entrustee was . . . an incompetent driver[; and t]he defendant had actual or constructive knowledge, . . . that the entrustee was incompetent." 8 Am. Jur. 2d Automobiles § 1109 (2015); *see Spencer v. Gamboa*, 1985-NMCA-033, ¶ 8, 102 N.M. 692, 699 P.2d 623 (stating that to prevail on a vehicle negligent entrustment claim, a "plaintiff must show that the defendant loaned the car to a person it either knew or should have known was an incompetent driver, and the driver's incompetence caused the injury"). Another section, Section 390, "states a specialized rule pertinent to automobiles." *Gabaldon v. Erisa Mortg. Co.*, 1997-NMCA-120, ¶ 26, 124 N.M. 296, 305, 949 P.2d 1193, *aff'd in part, rev'd in part on other grounds*, 1999-NMSC-039, 128 N.M. 84, 990 P.2d 197. Section 390 provides that

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely

10

> because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). A central feature of these definitions is the act of entrustment, or permission, to use the vehicle. *See* 61 C.J.S. *Motor Vehicles* § 956 (2015) (stating that "in order that the doctrine apply, it is essential that the person sought to be held legally responsible have the right of control over the vehicle. Permission, either express or implied, is thus a prerequisite to a suit for negligent entrustment of an automobile." (footnote omitted)). In *Gabaldon*, this Court observed that an important aspect of Section 308 of the Restatement (Second) of Torts "is the idea that the 'third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.'" *Gabaldon*, 1997-NMCA-120, ¶ 27 (quoting Section 308 cmt. a of the Restatement (Second) of Torts). Hence a number of negligent entrustment cases hinge on the presence or absence of such consent. *See, e.g.*, *McManus v. Taylor*, 756 S.E.2d 709, 713 (Ga. Ct. App. 2014) ("Where the uncontroverted evidence shows that [the driver] took the [vehicle] without [the owner's] permission and knowledge, it cannot be said that [the owner] lent [the driver] the car or otherwise entrusted him with it."); *Butler v. Warren*, 582 S.E.2d

11

530, 532-33 (Ga. Ct. App. 2003) (holding there was no entrustment where the driver had permission to drive a truck on the owner's property but not off of it); *Evans v. Shannon*, 776 N.E.2d 1184, 1193 (Ill. 2002) (holding that where "there was no express or implied permission granted to [the driver] to use the vehicle at the time the collision occurred[,] there was no entrustment.").

{13}   This principle obviously extends to preclude a negligent entrustment claim where the owner has prohibited the driver from using the vehicle. Thus, negligent entrustment does not "impose liability upon the alleged 'trustor' for the negligent operation of a vehicle which he had expressly forbidden the alleged 'trustee' to drive." *Farney v. Herr*, 358 S.W.2d 758, 761 (Tex. Civ. App. 1962); *accord Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994) ("The authorities are in substantial accord that where the alleged entrustor has prohibited the entrustee from operating the automobile or using the instrumentality in question, there is no responsibility because there has been no entrustment." (internal quotation marks and citation omitted)).

{14}   Typical vehicle negligent entrustment claims involve claims against an entrustor by a person injured by a driver. It is clear that under New Mexico law such "third-party claims" are recognized. *Sanchez*, 1997-NMCA-068, ¶ 11 ("[O]ne who negligently entrusts a motor vehicle to an incompetent driver may be liable for injury to a third person caused by the driver's incompetence."). In *Sanchez*, this Court

12

examined for the first time whether "first-party claims" would also be recognized. In other words, is an entrustor liable to the entrustee when the entrustee is injured "as a result of driving while intoxicated[?]" *Id.* ¶ 12. The Court began by noting that the holding in *Trujillo v. Trujillo*, 1986-NMCA-052, ¶ 1, 104 N.M. 379, 721 P.2d 1310, which was that "a tavernkeeper who unlawfully serves alcohol to an intoxicated patron is [not] civilly liable for injuries suffered by the patron as a result of that act[,]" was later restricted by statute. *Sanchez*, 1997-NMCA-068, ¶ 16. After passage of NMSA 1978, Section 41-11-1(B) (1986), "if the tavernkeeper acted with gross negligence and reckless disregard for the patron's safety, the tavernkeeper may be liable to the patron." *Sanchez*, 1997-NMCA-068, ¶ 16. Because it concluded that the balance of policy concerns evident in Section 41-11-1(B) justified extension of this framework to entrustors, the Court held that "one who entrusts a motor vehicle to an intoxicated person may be liable to the entrustee if the entrustor acts with gross negligence and reckless disregard for the safety of the entrustee." *Sanchez*, 1997-NMCA-068, ¶ 20.

{15}    In *Sanchez*, the entrustee stated in an affidavit that he told the entrustor, his employer, that he was "drunk, tired, hung over[,] and unfit to operate [a] cement truck." *Id.* ¶ 26. Nevertheless, the employer "refused to let [him] off work, and ordered [him] to get [his] truck, load up and begin [his] runs for the day." *Id.* Even

13

though the entrustee told the employer again later in the day that he was drunk and unfit to drive the cement truck, the employer again refused to release him and "told [him he would] be fired if [he] did not continue to work that day." *Id.* The entrustee was injured in a single-car accident in the cement truck. *Id.* ¶ 2. The Court concluded that the fact finder could determine that the entrustee "was ordered to drive his truck despite the fact that he was visibly intoxicated, said he was intoxicated, and asked to be relieved of duty." *Id.* ¶ 28. It further concluded that "[i]f such facts were found, the fact finder could decide that the [employer] acted with gross negligence and reckless disregard for [the entrustee's] safety when he entrusted [the entrustee] with the [employer's] truck." *Id.* Consequently, summary judgment was improper. *Id.*

{16}     But the *Sanchez* Court did not decide "whether an entrustor should be liable to a voluntarily intoxicated entrustee for *simple* negligence," calling this question "a more difficult issue." *Id.* ¶ 21 (emphasis added). In dicta, the Court recognized that "the language of *Trujillo* suggests that voluntary intoxication should be treated as a special species of fault" and that "some New Mexico authority treats voluntary intoxication as akin to intentional misconduct," both factors which weigh against allowing an intoxicated entrustee to recover from entrustors. *Id.* ¶ 22 (citing *California First Bank v. State*, 1990-NMSC-106, ¶ 34 n.6, 111 N.M. 64, 801 P.2d 646). It also recognized, however, that the commentary to Section 390 of the

Restatement (Second) of Torts supported liability of entrustors and that this section had been relied upon by the Colorado Supreme Court to permit recovery by an intoxicated entrustee. *Sanchez*, 1997-NMCA-068, ¶ 23 (citing *Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992) (en banc)). Finally, it noted that in adopting comparative negligence principles, "New Mexico has largely eliminated distinctions between degrees of negligence and there is a strong presumption against introducing them in our tort law." *Id.* ¶ 21.

{17}    In addition to Colorado, a number of states have recognized a first-party negligent entrustment cause of action for the injured entrustee that does not depend on gross negligence. The courts in these cases relied on the fact that in a pure comparative fault system, the entrustor's negligence is balanced against the intoxicated entrustee's negligence. In Missouri, for example, the Court of Appeals for the Western District followed Section 390 of the Restatement (Second) of Torts to hold that "under a pure comparative fault system (like Missouri's), a plaintiff will not be barred from recovery, even if his own negligence greatly outweighed that of the defendant." *Hays v. Royer*, 384 S.W.3d 330, 336-37 (Mo. Ct. App. 2012). Similarly, the Florida District Court of Appeal for the First District held that "an adult drunken driver who injures himself is entitled to a comparative fault trial predicated on the theory of negligent entrustment." *Gorday v. Faris*, 523 So. 2d 1215, 1218 (Fla. Dist.

Ct. App. 1988) (agreeing with Section 390 of the Restatement (Second) of Torts and listing states in which a first-party negligent entrustment claim is recognized); *accord Herland v. Izatt*, 2015 UT 30, ¶ 33, 345 P.3d 661 (stating that "although there are competing social policies that favor and disfavor first-party recovery by an intoxicated individual, nothing bars first-party recovery as a matter of law. As a result, [the plaintiff's] estate may argue for recovery, but the estate must overcome the high hurdle of comparative negligence in order to prevail, as would any plaintiff whose injury occurs while he or she is voluntarily intoxicated."); *King v. Petefish*, 541 N.E.2d 847, 852 (Ill. App. Ct. 1989) (stating that "a suit brought by an injured entrustee against his entrustor is a viable cause of action in a comparative negligence jurisdiction" and observing that "the [s]tates that have adopted comparative negligence seem to uniformly accept such a cause of action"); *Blake v. Moore*, 208 Cal. Rptr. 703, 707 (Ct. App. 1984) (stating that the injured plaintiff "is entitled to a comparative fault trial. This should result in a weighing of [the] defendant's fault in entrusting his car to [the] plaintiff with knowledge of the intoxication, and the fault of [the] plaintiff in drinking and then driving.").

{18} Other states have refused to recognize a first-party claim for an intoxicated entrustee, reasoning that where contributory or modified comparative negligence principles apply, the fault of the intoxicated driver will bar recovery. *See, e.g., Lydia*

16

*v. Horton*, 583 S.E.2d 750, 752 (S.C. 2003) ("We believe that this state's modified comparative negligence system also bars an intoxicated adult's recovery on a first party negligent entrustment cause of action. We cannot imagine how one could be more than fifty percent negligent in loaning his car to an intoxicated adult who subsequently injured himself."); *Bailey v. State Farm Mut. Auto. Ins. Co.*, 881 N.E.2d 996, 1003 (Ind. Ct. App. 2008) (noting that Indiana follows a modified comparative fault system and stating that "one who drives while intoxicated is generally more at fault than one who permits another to drive while intoxicated"); *Meachum v. Faw*, 436 S.E.2d 141, 145 (N.C. Ct. App. 1993) (stating that "the plaintiffs' claim is barred by decedent's contributory negligence as alleged in the complaint"). Finally, some states have held that a first-party claim is contrary to the policy of those states because "an intoxicated person should not generally be permitted to benefit from his or her own intoxication." *Shultes v. Carr*, 512 N.Y.S.2d 276, 277 (1987).

{19} Clearly the cases premised on contributory or modified comparative fault principles are inapposite to New Mexico. We also do not find the blanket prohibition against first-party claims based on policy concerns as stated in *Shultes* persuasive because some policy interests weigh in favor of permitting a first-party claim. We agree with the *Casebolt* court "that voluntary intoxication is socially undesirable

17

conduct and that individual responsibility to refrain from such conduct should be promoted." 829 P.2d at 362.

> These considerations, however, cannot be permitted to obscure the fact that a vehicle owner who has the right and ability to control the use of the vehicle and takes no action to prevent the continued use of the vehicle by a borrower who the owner knows is likely to operate the vehicle while intoxicated is also engaged in morally reprehensible behavior that should be discouraged.

*Id. But see Bailey*, 881 N.E.2d at 1003 (disagreeing with the rationale in *Casebolt* and stating, "We do not believe that allowing drunk drivers to recover from those who allow them to drive drunk significantly furthers the already existing public policy against drunk driving."). Given that New Mexico adheres to pure comparative negligence principles, we agree with the court in *Casebolt* that "[c]omparative negligence provides the appropriate framework for examining any negligence on the part of the individual who drives after consuming alcoholic beverages." 829 P.2d at 362. Thus, we hold that, provided that the elements of negligent entrustment are proven, an entrustee may state a claim for simple negligent entrustment against the entrustor when the entrustee's voluntary intoxication causes injury. Such claims need not be founded on a showing of gross negligence and reckless disregard as in *Sanchez*.

{20}    We now turn back to the facts of the present matter. Plaintiff appeals the grant of summary judgment to Defendant. On appeal, "we view the facts in the light most

18

favorable to the party opposing summary judgment, drawing all inferences in favor of that party" and examine whether "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Gormley v. Coca-Cola Enters.*, 2005-NMSC-003, ¶ 8, 137 N.M. 192, 109 P.3d 280 (internal quotation marks and citations omitted). Our review of the latter question is de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

{21}     To prevail on a negligent entrustment claim, Plaintiff must show that "[D]efendant [entrusted] the car to [Manuel when it] knew or should have known [Manuel] was an incompetent driver, and [Manuel's] incompetence caused the injury." *Spencer*, 1985-NMCA-033, ¶ 8. Defendant makes no argument as to whether Manuel's intoxication caused the accident. The parties' arguments focus instead on facts related to the first two elements, including Manuel's status on Defendant's "do not drive" list, the supervisor's knowledge that Manuel drove the Suburban to Springer and to pick up groceries and liquor on the night of the accident, and the supervisor's knowledge that Manuel was drinking on the night of the accident. Plaintiff argues that "[f]rom these facts, a jury could make the inference that the supervisor showed reckless disregard and utter indifference for [Manuel's] safety or the safety of others." We conclude that there is a genuine dispute over whether

Defendant entrusted the Suburban to Manuel and therefore conclude that summary judgment on Plaintiff's negligent entrustment claim was inappropriate. We explain.

{22} As discussed above, permission is an integral part of an entrustment claim. Permission may be express or implied. *Bishop v. Morich*, 621 N.E.2d 43, 45 (Ill. App. Ct. 1993). "Implied permission to use a motor vehicle can be inferred from a course of conduct or relationship between the parties, or other facts and circumstances signifying the assent of the owner." *Allstate Ins. Co. v. Jensen*, 1990-NMSC-009, ¶ 8 n.3, 109 N.M. 584, 788 P.2d 340 (discussing implied consent in the context of permissive use of an insured vehicle); *see Trujillo v. Rivera*, 1953-NMSC-064, ¶ 7, 57 N.M. 451, 260 P.2d 365 (holding that the evidence supported a finding of implied consent for a minor child to use a family vehicle).

{23} Based on the undisputed facts, Defendant did not expressly permit Manuel to drive the Suburban after dinner on the evening of the accident. The superintendent told Manuel not to drive the Suburban after work hours except to buy supplies and the supervisor told all the employees at the motel not to drink too much and not to leave the motel on the night of the accident. Thus, Manuel did not have express permission to drive the Suburban after dinner that evening.

{24} Whether Manuel had implied permission to drive the Suburban that night is a closer question. Plaintiff argues that because Manuel's superiors knew that he had the

20

keys and had been driving it throughout the week, including that night, and because the supervisor knew that Manuel had been drinking beer that night, they impliedly consented to his use of the vehicle. Plaintiff also maintains that the superintendent and supervisor should have told Manuel that he could not drive the Suburban and, because they did not object to him driving it, their consent was implied. *See Gruger v. W. Cas. & Sur. Co.*, 1976-NMSC-068, ¶ 5, 89 N.M. 562, 555 P.2d 683 ("Implied permission is found when the insured does not expressly give his consent but consent is implied by his conduct, including lack of objection."), *overruled by United Servs. Auto. Ass'n v. Nat'l Farmers Union Prop. & Cas.*, 1995-NMSC-014, 119 N.M. 397, 891 P.2d 538.

{25}     Viewing the undisputed facts in the light most favorable to Plaintiff, we conclude that "a reasonable fact[]finder could draw certain inferences and come to certain conclusions favorable to Plaintiff's claim." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 26, 139 N.M. 12, 127 P.3d 548. Hence, summary judgment on this issue was inappropriate. Having concluded that there are genuine issues of fact related to whether Defendant entrusted the vehicle to Manuel, we need not address whether there are questions of fact related to whether Defendant knew or should have known that Manuel was intoxicated or otherwise incompetent to drive. "Plaintiff is

not required to show disputed issues of fact for every element of the claim[.]" *Id.* ¶ 25.

**CONCLUSION**

{26}   For the foregoing reasons, we reverse the grant of summary judgment to Defendant and remand for further proceedings consistent with this Opinion.

{27}   **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**M. MONICA ZAMORA, Judge**

22