Marla K. YOUNG, Appellant–
Respondent,

v.

Timothy S. YOUNG, Appellee–
Petitioner.

No. 09A05–0701–CV–52.

Court of Appeals of Indiana.

Nov. 15, 2007.

Publication Ordered Jan. 31, 2008.

Transfer Granted March 20, 2008.

Jim Brugh, Logansport, IN, Attorney for Appellant.

Derick W. Steele, McCann/Peelle, Kokomo, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Marla K. Young appeals the trial court's calculation of the child support obligation of appellee-petitioner Timothy S. Young. In particular, Marla argues that the trial court erroneously calculated the parties' respective incomes, gave Timothy a credit for the payment of the children's healthcare insurance

premium, and gave Timothy a parenting time credit that is excessive. Finding that the trial court erroneously calculated the amount of income to be imputed to Marla and that it erroneously calculated Timothy's Weekly Gross Income, but finding no other error, we affirm in part, reverse in part, and remand with instructions to (1) recalculate the amount of income to be imputed to Marla; (2) add $100 to Timothy's Weekly Gross Income; and (3) taking (1) and (2) into account, recalculate Timothy's child support obligation.

## FACTS

Marla and Timothy were married on April 30, 1988, and three children were born of the marriage on June 11, 1989, April 28, 1992, and November 15, 1994, respectively. On August 14, 2000, Timothy filed a petition to dissolve the marriage. On February 22, 2002, the parties agreed that Timothy's provisional child support obligation was $150 per week.

On November 18, 2003, the trial court entered a decree of dissolution of marriage (the decree), which incorporated the parties' settlement agreement (the agreement). The decree awarded joint custody of the three children to Marla and Timothy and awarded physical custody of the children to Marla. Timothy was awarded parenting time according to the Parenting Time Guidelines and, in addition, was awarded "visitation on Tuesdays and Thursdays after school until 7:30 p.m. during school and overnight if school is not in

session and every other weekend, holidays and vacation times per the guidelines." Appellant's App. p. 34. The decree further provided, per the agreement, that Timothy's weekly child support obligation would continue to be $150 for two years and, "[w]hen the parties' income situation has stabilized, child support will be renewed and computed pursuant to the income of the parties retroactive to January 1, 2005. Said child support shall be calculated based upon the 2004 income tax returns of the parties." Id.

On September 30, 2005, Marla requested that the trial court schedule a hearing for the purpose of recalculating child support based upon the parties' 2004 tax returns. She requested that the trial court enter findings of fact and conclusions of law. The trial court held a hearing on August 10, 2006, at which time Marla filed two child support worksheets—one for 2005, based on the 2004 tax returns, and one for 2006, based on the 2005 tax returns. Timothy did not file any worksheets.[1] On December 29, 2006, the trial court entered an order containing findings of fact and conclusions of law and ordering that, retroactive to January 1, 2005, Timothy's revised weekly child support obligation is $327.20. Marla now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Here, the trial court entered findings of fact and conclusions of law at

---

1. Marla makes a flimsy argument regarding Timothy's failure to file a child support worksheet. We have noted in the past, however, that although the Child Support Guidelines mandate that the parties file worksheets, the guidelines do not specify a consequence stemming from the failure to file. *Williamson v. Williamson*, 825 N.E.2d 33, 43 n. 4 (Ind.Ct. App.2005). The *Williamson* court noted that although we have, upon occasion, remanded to the trial court when there was insufficient evidence—e.g., pay stubs and tax returns— supporting the child support calculation, in general, the absence of worksheets does not prevent a trial court from entering a support award. *Id.* Instead, the only consequence is that the noncomplying party may not challenge the income figures arrived at by the trial court. Here, Timothy was the noncomplying party and does not attempt to challenge the trial court's calculations. Consequently, his failure to file a worksheet is of no moment.

Marla's request pursuant to Indiana Trial Rule 52(A). Therefore, our standard of review is two-tiered: we first determine whether the evidence supports the trial court's findings and then we determine whether those findings support the judgment. *Purcell v. S. Hills Invs., LLC,* 847 N.E.2d 991, 996 (Ind.Ct.App.2006). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them, and the trial court's judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely upon those findings. *Id.* In determining whether the findings or the judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences to be drawn therefrom. *State v. Universal Outdoor, Inc.,* 864 N.E.2d 403, 406 (Ind.Ct. App.2007). We neither reweigh the evidence nor judge the credibility of witnesses, and we must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.*

■ A trial court's calculation of child support is presumptively valid. *Kondamuri v. Kondamuri,* 852 N.E.2d 939, 949 (Ind.Ct.App.2006). We also note that in a family law context, the trial judge is in the best position to judge the facts, evaluate family dynamics, and get a sense of the parents and their relationships with their children, all of which are exceedingly difficult for this court to assess. *Miller v. Sugden,* 849 N.E.2d 758, 759–60 (Ind.Ct. App.2006), *trans. denied.*

## II. Calculation of Income

Marla first argues that the trial court erroneously calculated her income by imputing income to her based on a conclusion that she was voluntarily underemployed. She also contends that the trial court erroneously calculated Timothy's income by deducting the amount of maintenance he

pays to Marla, accounted for deprecation of Timothy's business, and averaged Timothy's income for 2004 and 2005.

### A. Marla

■ The Indiana Child Support Guidelines enable trial courts to impute income to parties for the purpose of the calculation of child support under certain circumstances:

c. Potential income. Potential income may be determined if a parent has no income, or only means-tested income, and is capable of earning income or capable of earning more. *Obviously, a great deal of discretion will have to be used in this determination.* One purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support. Another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed.

\* \* \*

(2) When a parent has some history of working and is capable of entering the work force, but voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income should be determined to be a part of the gross income of that parent. The amount to be attributed as potential income in such a case would be the amount that the evidence demonstrates he or she was capable of earning in the past.

\* \* \*

d. Imputing Income. Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own

earning capabilities is also *a fact-sensitive situation requiring careful consideration of the evidence in each case....* The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

Ind. Child Support Guideline 3(A) cmt. 2 (emphases added).

Here, the trial court found that while Marla and Timothy were married, Marla owned an insurance agency and paid herself $42,000 per year plus additional, variable profit. She received this business pursuant to the parties' property settlement. After the divorce, Marla cut back on the amount of time she worked such that in 2004, Marla paid herself a "substantially reduced salary" and profit in the amount of $12,500. Appellant's App. p. 9. She subsequently sold the business altogether and "retired" at approximately the same time she remarried. *Id.* The court attributed income earning ability of $54,500 to Marla, which is the sum of her 2000 salary of $42,000 and her 2004 salary and profit of $12,500. The trial court declined to include the one-time capital gain of $40,733 that Marla realized from the sale of the business in her income because "[s]he has a right to sell the business and can use the capital gains to help support the children if she continues to elect to be retired at her young age. The children and [Timothy] should not be punished economically because she has elected to remarry and take an 'early retirement.'" *Id.* at 10.

As noted above, the trial court enjoys broad discretion to impute income to a parent so that the parent may not evade a support obligation. *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct.App.2000). Here, there is evidence in the record supporting the trial court's conclusion that although Marla chose to remarry and sell her business—as she is certainly entitled to do—she is capable of entering the workforce and earning income. Thus, we find that the trial court properly imputed income to Marla.

The amount of income imputed to her, however—$54,500—is not within the scope of the evidence. There is no evidence that Marla has ever earned $54,500 in one year. Rather, the record reveals that the most Marla ever earned was $42,000, which occurred in 1999 and 2000. But after the divorce, she cut back on her hours such that in 2003, 2004, and 2005, she earned only $12,500 per year. We can only conclude, based on this evidence, that the trial court abused its discretion by imputing $54,500 in income to Marla. Consequently, we remand with instructions to recalculate the amount of income to be imputed to Marla.

### B. Timothy

#### 1. Maintenance

As a part of the division of marital property, Timothy agreed to pay Marla maintenance in the amount of $565,000 at 6.5% interest over fifteen years. He paid a portion of this maintenance—$59,100—in 2004 and deducted that sum on his 2004 tax return. The trial court implicitly included that deduction by accepting the adjusted gross income figure on Timothy's 2004 tax return. Marla argues that "[i]t is inequitable to utilize Marla's receipt of maintenance as part of the marital property distribution as a deduction in the calculation of Tim's weekly gross income." Appellant's Br. p. 26. Marla cites to only one case in support of this argument—*Scoleri v. Scoleri*, 766 N.E.2d 1211, 1218 (Ind.Ct. App.2002). *Scoleri*, however, is inapposite, inasmuch as the *Scoleri* court concluded that Father's early withdrawal from his

401(k) account, which he had received as part of the marital property distribution, did not constitute income to be included in child support calculations. *Id.*

Pursuant to *Scoleri,* it would be inequitable for Timothy's maintenance payments to Marla to be included in the calculation of *her* income for child support purposes. That, however, did not occur. She has cited to no authority supporting a proposition that the trial court is not entitled to use a party's adjusted gross income for child support purposes where that figure includes maintenance payments made to the other party. Moreover, she fails to make a cogent argument in support of this position. Consequently, we decline to find that the trial court abused its discretion in this regard.

### 2. Depreciation

■ In 2004 and 2005, Timothy was self-employed and deducted certain business expenses and depreciation from his gross income on his tax returns. Marla argues that the trial court improperly deducted Timothy's business depreciation from his 2004 and 2005 income for child support purposes.

■ The calculation of a parent's income for child support purposes is more inclusive than the calculation for income tax purposes. *Clark v. Madden,* 725 N.E.2d 100, 107 (Ind.Ct.App.2000). The trial court is vested with discretion regarding the validity of business expenses and deductions taken for tax purposes by a business owner. *Id.* The Child Support Guidelines instruct the trial court to proceed carefully: "[i]n general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income."

Here, the trial court made the following findings regarding Timothy's business and its depreciation:

15. [Timothy] and the business interests had a very good year in 2004 and a dismal year in 2005 as the economy and [H]urricane Katrina caused them to lose their biggest customer, their cost of gasoline doubled. In addition, and the costs to manufacture bottles, a major component of their business, was extremely volatile as a result of the sharp increase in the cost of the resin used in the plastic, a petroleum by-product.

\* \* \*

17. [The parties' accountant, Irv Hoffbauer] explained that the key to the settlement of property was the tax angles that allowed [Timothy] to keep the family business ... and pay [Marla] $59,000.00 plus per year.... This payment plan has apparently helped enable [Marla] to "retire".

18. Mr. Hoffbauer described the business at issue as highly capital intensive, that the family business has had to use their retained earnings to finance growth and maintenance of the business assets, and that depreciation is used pursuant to accepted accounting and tax practices to operate the business. That their capital expenditures, which are often large, do not occur in an even [sic] pattern, and that the income and expenditures are evened out as well as can be expected using the accounting concept of depreciation.

19. [Marla's] position has been to attempt to ... add back in depreciation [to Timothy's adjusted gross income on his tax returns], a procedure contra to general accounting practices and defeating the hard-crafted plan that resulted [in] the marriage settlement agreement. Mr. Hoffbauer testified that his account-

ing for the income of the corporation was accurate and fair and to make changes in approach as contemplated now by [Marla] would disrupt the business, if the cost of doing business had to be depleted to pay support. The "Golden Goose," so to speak, would be destroyed if the lifeblood of the settlement plan were drained away.

19. [sic] The "depreciation" referred to, and as used by Mr. Hoffbauer in computing [Timothy] and the other family businesses, is a generally accepted accounting term used to evaluate and take economic decreases in the value of an asset. This money is then used to create a fund to replace the same asset and to generate future income from that asset. Such funds are required, especially in a capital intense business to keep the business functioning. Without this money, [Timothy] could not pay the $60,000.00 plus per year to [Marla] as required in the settlement agreement.

* * *

25. In calculating support the Court finds that it is reasonable to use [Timothy's adjusted gross income from the 2004 and 2005 tax returns] and average those incomes and divide the total by 104 to get the average [weekly] income for the two years. In part it is the intent and desire of this Court not to cause artificial "games" with business income and "deductions" which does not appear to have occurred in the tax returns prepared by Mr. Hoffbauer....

Appellant's App. p. 11–13. It is apparent that, as instructed by the Guidelines, the trial court carefully considered Timothy's business deductions, including depreciation. The court found Hoffbauer's testimony to be credible, as it was entitled to do, and we may not second-guess that evaluation. Furthermore, the trial court concluded that to deny Timothy a deduction for depreciation would upset the balance struck by the parties as a result of their marital settlement agreement. Under these circumstances, we cannot say that the trial court abused its discretion in factoring Timothy's business depreciation into his weekly income for child support purposes.

### 3. Averaging

■ Marla also argues that the trial court improperly averaged Timothy's income in 2004 and 2005 to arrive at his weekly income for child support purposes.[2] Marla suggests that "[t]he fair approach to calculating Tim's support obligation is on a year-by-year basis...." Appellant's Br. p. 32. The logical extrapolation of this argument, however, is that the parties would have to come back into court every year for a recalculation of their respective child support obligations. This solution is impractical and untenable. The trial court had two years of income information with which to calculate the parties' support obligations, and it was logical and practical for the trial court to average the information to arrive at a single amount. Marla argues that 2005 was an aberration for Timothy's business and that his business income nearly always exceeds the amount he earned in that year. She is free, however, to return to court in the future and request a modification of the parties' child

---

2. The parties' settlement agreement contemplated the use of only their 2004 tax returns to calculate their 2005 child support obligations. Because of litigation delays, however, the hearing did not take place until 2006. Consequently, both parties offered data regarding their respective incomes in 2004 *and* 2005. They implicitly consented, therefore, to modify the settlement agreement such that the trial court was entitled to take their income from both 2004 and 2005 into account.

support obligations pursuant to Indiana Code section 31–16–8–1.[3] Under these circumstances, we cannot conclude that the trial court abused its discretion by averaging Timothy's 2004 and 2005 income to arrive at his weekly child support obligation.

### III. Health Insurance

■ Marla next contends that the trial court erroneously credited Timothy for the cost of the children's healthcare insurance premium. Timothy's business incurred that cost and deducted the expense on its tax returns. Appellant's App. p. 292–96. The trial court, however, found that Timothy was entitled to a weekly credit of $100 for the cost of the healthcare premium. *Id.* at 15.

The Child Support Guidelines instruct that "[t]he weekly cost of health insurance premiums for the child(ren) should be added to the basic obligation whenever either parent actually incurs the premium expense or a portion of such expense." Child Supp. G. 3(E)(2). Marla argues that Timothy did not "actually incur" the cost of the premium—his business did, and proceeded to use the expense as a tax deduction.

■ Specifically, Timothy's wholly-owned limited liability company (LLC) incurred the cost of the children's healthcare insurance premium. Under certain circumstances, "the shareholder of a wholly-owned subchapter S corporation is to be treated the same as a self-employed person operating the business" for the purposes of calculating the shareholder's child support obligation. *Glass v. Oeder,* 716 N.E.2d 413, 416 (Ind.1999). Although our Supreme Court explicitly declined in *Glass* to consider whether its analysis of a subchapter S corporation also applies to other business entities that have not elected to be taxed under subchapter S, we find that the same rationale applies to LLCs. *Compare Glass,* 716 N.E.2d at 416 (holding that "[a]lthough the corporation is a separate legal entity, because subchapter S was elected, its income for purposes of federal and Indiana taxation is attributable to" the shareholder-parent), *with Five Star Concrete, LLC v. Klink, Inc.,* 693 N.E.2d 583, 586 (Ind.Ct.App.1998) (observing that "LLCs offer the same limited liability as the corporate form of business organization, but they are treated by federal and state taxing bodies in the same way as partnerships, that is, income 'passes through' the entity and is taxed to the member, an owner of an interest in the company"). Inasmuch as the income of a wholly-owned LLC is properly factored into account in determining the owning member's child support obligation, it follows that the LLC's costs and expenses are also properly taken into consideration.

Here, for all intents and purposes, the trial court found that Timothy *did* actually incur the cost of the children's healthcare insurance premium because his wholly-owned LLC paid those bills. And we conclude, given the authority above and the fact-sensitive nature of the inquiry, that the trial court properly credited Timothy for that cost.

---

**3.** Indiana Code section 31–16–8–1 provides that a child support order may be modified

  (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

  (2) upon a showing that:

   (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

   (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

That said, we also observe that the trial court neglected to include the cost of the children's healthcare premium in Timothy's income before crediting him that amount. Logic and fairness dictate that the trial court cannot give Timothy a weekly credit of $100 for something that is not first included in his Weekly Gross Income. Using the trial court's numbers on the Child Support Obligation Worksheet—though, as we have already found herein, Marla's Weekly Gross Income is too high on that worksheet—our calculations reveal that this change would make a difference of $8.50 per week, which is not an insignificant amount of money over the course of an entire year. We remand, therefore, with instructions to add $100 to Timothy's Weekly Gross Income.

### IV. Parenting Time

▆▆▆▆ Finally, Marla argues that the trial court erroneously calculated the credit owed to Timothy for his parenting time with the children. The award of parenting time credit is within the trial court's discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind.Ct.App.2007).

Here, pursuant to the parties' agreement, Timothy has at least fifty-two overnights per year with the children and, additionally, "two evenings per week wherein he picks up the children from school, to and from their activities, feeds them, does homework with them, and returns them home for bed." Appellant's App. p. 13. The trial court noted that "it is the goal of the parenting time credit to encourage the kind of time [Timothy] is spending with the children" and concluded that "it is appropriate to credit [Timothy] with 52 weekend overnights plus 52 nights for the 104 evenings that he has the children. (i.e., 2 evenings with meals and time nurturing the children in place of one midweek overnight with 1 evening meal)." *Id.*

The Child Support Guidelines note that "[a]n overnight will not always translate into a twenty-four hour block of time with all of the attendant costs and responsibilities." Child Supp. G. 6. Credit for an overnight should include "the costs of feeding and transporting the child, attending to school work and the like." *Id.*

Here, Timothy spends two evenings per week with the children—in addition to fifty-two overnight visits on alternate weekends—and assumes responsibility for their care from the time they leave school until bedtime. This evidence supports the trial court's conclusion that two of these evening visits equate to one overnight visit, for a total of an additional fifty-two overnight visits per year. We cannot say, based on this evidence, that the trial court abused its discretion in computing the parenting time credit owed to Timothy.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to (1) recalculate the amount of income to be imputed to Marla; (2) add $100 to Timothy's Weekly Gross Income; and (3) taking (1) and (2) into account, recalculate Timothy's child support obligation.

BAILEY, J., and VAIDIK, J., concur.

### ORDER

On November 15, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellant, by counsel, has filed a Motion to Publish.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The appellant's Motion to Publish is GRANTED and this Court's opinion heretofore handed down in this cause on November 15, 2007, marked Memorandum

Decision, Not for Publication is now ORDERED PUBLISHED.

BAKER, C.J., BAILEY and VAIDIK, JJ., concur.