[Cite as *Parma v. Demsey*, 2011-Ohio-6624.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96351**

## CITY OF PARMA

PLAINTIFF-APPELLEE

vs.

## KENNETH DEMSEY

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-723874

**BEFORE:** E. Gallagher, J., Boyle, P.J., S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEY FOR APPELLANT**

Robert Troll Lynch
Lynch Legal Services
26300 Seville Drive
Suite 104
Beachwood, Ohio 44122

**ATTORNEYS FOR APPELLEE**

Timothy G. Dobeck
Law Director/Chief Prosecutor
Milos Veljkovic
Assistant Law Director
Michelle L. Conrad
Staff Attorney
City of Parma
6611 Ridge Road
Parma, Ohio 44129

EILEEN A. GALLAGHER, J.:

**{¶ 1}** Kenneth Demsey appeals from the decision of the Cuyahoga County Court of Common Pleas, affirming his administrative appeal of the decision of the Parma, Ohio Photo Enforcement Program hearing officer. Demsey argues that the trial court erred when it failed to properly recognize and apply the Home Rule Amendment to the issue of traffic camera citations. For the following reasons, we affirm the decision of the trial court.

**{¶ 2}** In 2009, Parma City Council enacted Parma Codified Ordinances 313.035, which created an automated school zone enforcement program. The program enacted

civil penalties for violations of the maximum school zone speed limit and also contained an administrative appeal process for those who wished to contest their notice of violation.

{¶ 3} On January 29, 2010, Officer Kevin Stasiak of the Parma Police Department operated the mobile automated enforcement camera unit in the area around Holy Family Grade School, 7367 York Road. At 2:47 p.m., the automated enforcement system recorded Demsey traveling 35 m.p.h. in a 20 m.p.h. school zone through both video and still photographs.

{¶ 4} In accordance with Parma Codified Ordinances 313.035, Officer Stasiak reviewed Demsey's violation, which included the photographic and video evidence, and issued Demsey a notice of liability for speeding in a school zone. In addition to the violation notice, Demsey was provided with a payment coupon, an affidavit form for Demsey's use if he wished to aver that he was not driving the vehicle at the time of the violation, and a hearing request form. These three options are mailed to each person that violates the speed limit. P.C.O. 313.035.

{¶ 5} On February 24, 2010, Demsey requested a hearing and on March 11, 2010, a hearing officer for the Parma Photo Enforcement Program conducted the hearing. Prior to the commencement of the hearing, the hearing officer read the following general statement to all individuals scheduled to appear:

"You are here because you have requested a hearing to review the facts

surrounding the Notice of Liability you received under Parma's Photo Enforcement Program. The Notice was sent because a vehicle driven by you or registered under your name was found to be traveling at a speed in excess of the 20 mph speed limit for a school zone.

{¶ 6} "This is a civil matter and not criminal. If you are found liable, you will forfeit the bond that you have deposited with the Program. However, this finding will **not** be sent to the State of Ohio, Bureau of Motor Vehicles, and will **not** result in points being added to your driving record. In addition, your insurance company will **not** be notified of this violation or finding of liability."

{¶ 7} The hearing officer afforded Demsey the opportunity to speak on his own behalf. Demsey stated that he was a "real" radar technician and asked the city of Parma for proof of permission, granted by Jesus Christ to the City to set up the photo enforcement vehicle on Church property. Demsey argued that "without god's permission, the City had no right to be there and the ticket is void."

{¶ 8} Next, the hearing officer reviewed the video footage of Demsey's vehicle and the documents supplied by the city of Parma, which included the following: a copy of the original violation notice, original written hearing request, copy of the notice to appear, the Court Scattergram, as well as the deployment form filled out by Officer Stasiak. Additionally, the hearing officer afforded Demsey the opportunity to review a copy of the Statement of Technology that explained the reliability and operating nature of the Redflex Technology Equipment.

{¶ 9}  At the conclusion of the hearing, the hearing officer found Demsey liable for the speeding violation.  The hearing officer notified Demsey of his decision both orally and in writing.

{¶ 10} Demsey appealed this administrative decision to the Cuyahoga County Court of Common Pleas on April 12, 2010.  The trial court established a briefing schedule and on January 4, 2011, the trial court affirmed the hearing officer's opinion, concluding:

> "The Court having reviewed the entire record and the briefs of the Appellant-Defendant and the Appellee-Plaintiff, the court affirms the order of the hearing officer of the Parma, Ohio Photo Enforcement Program.  This Court finds said decision and order to be constitutional, supported by a preponderance of substantial, reliable and probative evidence, and further, that it is not illegal, arbitrary, capricious, or unreasonable."

{¶ 11} Demsey appeals, raising a sole assignment of error:

> "The trial court below erred to the prejudice of the Petitioner/Appellant in that the trial court failed to properly recognize and apply the 'home-rule' concept to the issue of traffic cameras."

{¶ 12} We find no merit to this assigned error.

{¶ 13} Construing the language of R.C. 2506.04, Ohio courts have distinguished the standard of review to be applied by common pleas courts and courts of appeals in R.C. Chapter 2506 administrative appeals.  The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary,

capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. See *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 612, 693 N.E.2d 219, citing *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 206-207, 389 N.E.2d 1113.

{¶ 14} The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is more limited in scope. *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

{¶ 15} Although Demsey raised numerous arguments during his administrative appeal to the trial court, his appeal to this Court focuses solely on the trial court's failure

to apply the Home Rule Amendment to the issue of traffic cameras.[1]  As such, our analysis of Demsey's appeal will be so limited.  Further, while Demsey did not specifically raise the amendment in his brief before the trial court, he referenced the concept tangentially, enough that this court will not deem the issue waived.  Having considered the entire record on appeal, we must determine whether the trial court abused its discretion in determining that the Home Rule Amendment did not bar Parma's codified Ordinances authorizing the use of traffic cameras.

{¶ 16} Section 3, Article XVIII of the Ohio Constitution provides that municipalities are authorized "to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."  Ohio courts apply a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule Amendment.  "A state statute takes precedence over a local Ordinances when (1) the Ordinances is in conflict with the statute, (2) the Ordinances is an exercise of the police power, rather than of local self-government, and (3) the statute is a general law."  *Canton v. State*, 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶9.

{¶ 17} In *Mendenhall v. Akron,* 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d

---

[1]In his reply brief, Demsey argues issues of alleged due process violations in addition to his arguments surrounding home rule.  The arguments relating to due process are outside Demsey's assigned error raised before this court and as such, are not properly presented to this Court in a reply brief.  App.R. 16(C).  Accordingly, this Court shall disregard the arguments.

255, the Ohio Supreme Court applied this three-part test to a City of Akron Ordinances providing for an automated mobile speed enforcement system used to identify speed-limit violators in school zones. In *Mendenhall*, the court held that "[a]n Ohio municipality does not exceed its home-rule authority when it creates an automated system for enforcement of traffic laws that imposes civil liability upon violators, provided that the municipality does not alter statewide traffic violations." Id. at syllabus.

{¶ 18} In upholding Akron's Ordinances, the court reasoned as follows:

> "Enactment of Akron's Ordinances is not an exercise of self-government but of concurrent police power. The statute governing speed limits is a general law because it is a comprehensive statewide enactment, setting forth police regulations that apply uniformly to all citizens throughout Ohio. Akron Ordinances 461-2005, which provides for implementation of an automated mobile speed-enforcement system, does not conflict with state law because it does not alter or supersede state law. The Ordinances provides for a complementary system of civil enforcement that, rather than decriminalizing behavior, allows for the administrative citation of vehicle owners under specific circumstances. Akron has acted within its home rule authority granted by the Constitution of Ohio."

Id.

{¶ 19} The city of Parma's Ordinances is substantially similar to the Akron Ordinances upheld by the Ohio Supreme Court in *Mendenhall*. Like Akron Ordinances 461-2005, Parma Codified Ordinances 313.035 creates a system that Parma maintains is purely civil in nature. The system provides for the automated traffic enforcement of existing traffic laws and does not modify any speed limits set by the state. The

Ordinances authorizes the imposition of civil monetary fines when the posted speed limit in the targeted enforcement areas has been violated. If a vehicle exceeds the posted speed limits, the owner of the vehicle receives a "notice of liability," which includes photographs of the vehicle, the vehicle's license plate, the date, time, and location of the violation, the posted speed limit, the vehicle's speed at the time of the violation, and the amount owed as a civil penalty. The criminal justice system is not involved in penalizing violations of the speed limit captured by an automated camera. Unlike those who receive speeding citations from a police officer who has observed the infraction, speeders caught by the automated enforcement system do not receive criminal citations, are not required to appear in traffic court, and do not have points assessed against their driving records.

{¶ 20} Because we see no substantial difference between the Akron Ordinances upheld by the Ohio Supreme Court and Parma Codified Ordinances 315.035, we find the reasoning enunciated by the Supreme Court in *Mendenhall* equally applicable to the present case. Accordingly, in conjunction with *Mendenhall,* we find that Parma did not exceed its home-rule authority in creating Ordinances 315.035. Thus, we find no error with the trial court's finding that the hearing officers decision was constitutional.

{¶ 21} Demsey's sole assignment of error is overruled.

{¶ 22} The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH
SEPARATE OPINION

SEAN C. GALLAGHER, J., CONCURRING:

{¶ 23} I concur fully with the judgment and analysis of the majority. I write separately to address concerns about due process and the admission of "technical" evidence with no record that it has ever been vetted for reliability.

{¶ 24} "There is no such thing as a perfect person, a perfect machine, or a perfect computer operating system."[2]

{¶ 25} The use of automated technology in society is increasing. Surprisingly, the admission of evidence derived from these new technologies is often unchallenged in Ohio courts. Often, as here, there is a presumption that everything works and is

---

[2] *State v. Warren and Hayes* (June 29, 2011), Athens M.C. Nos. 2011TRC01734 and

reliable.

**{¶ 26}** In this case, Demsey was given a copy of a document titled "Statement of Technology" that purports to explain the reliability and operating nature of the Redflex Technology equipment that measured his speed.

**{¶ 27}** Under Parma Codified Ordinancess 313.035(D)(4), the hearing officer may consider, as an affirmative defense, that the automated traffic enforcement camera system "was not operating properly." Despite this phrase, no standards for admissibility or reliability are outlined in the Ordinances. There is nothing referencing source codes for operation, margins of error, calibration (if applicable), radio interference (if applicable), weather, or other potential considerations that may affect the result. If the equipment is turned on and gives a result that the operator can explain, the motorist is liable.

**{¶ 28}** Analogous to municipal governments embracing automated traffic enforcement technology is Ohio's reliance on technology to enforce drunk driving under Ohio's O.V.I. laws. R.C. 4511.19(D)(1)(b) creates a mandatory duty to follow Ohio Department of Health regulations for admission of test results involving bodily fluids for alcohol levels as outlined under the Ohio Administrative Code. Unlike O.V.I. enforcement, automated speed technology is not subjected to any independent review

2011TRC02434 (Grimm, J.)

prior to implementation. Apparently, in this case no independent judicial review of the information contained in the "Statement of Technology" covering the reliability of this technology or the equipment occurred. Further, no administrative agency of the local government "vetted" this technology or the equipment to ascertain its reliability. The city of Parma entered into a contract with a private vendor, and inherent in this contract is the presumption that the science, the equipment, and the operator are apparently infallible.

{¶ 29} I am not suggesting that a *Daubert* hearing is required in every automated traffic enforcement case. *Daubert v. Merrill Dow Pharmaceuticals* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735. Nor am I ignoring the fact that a vendor may be able to produce test results from the manufacturer that trumpet the accuracy and reliability of the device in question. Despite this, at some point courts cannot abdicate their responsibility to independently determine what evidence is admissible based on some objective standards of reliability.

{¶ 30} Further, Ohio Evidence Rules 104 and 402 address general admissibility and relevance questions about evidence. Specifically, Evid.R. 702 provides even more specific guidance.[3] At section (C), the rule states:

---

[3] *State v. Warren and Hayes* (June 29, 2011), Athens M.C. Nos. 2011TRC01734 and 2011TRC02434 (Grimm, J.)

"To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

"(2) The design of the procedure, test, or experiment reliably implements the theory;

"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 31} No such judicial or administrative requirements are set for automated camera enforcement as used in this case.

{¶ 32} The Ohio Supreme Court, in a 4-3 decision, in 1984, held that an accused did not have a constitutional right to offer expert testimony to challenge the reliability of intoxilyzers in general. *State v. Vega* (1984), 12 Ohio St.3d 185, 463 N.E.2d 1303. Nevertheless, a defendant could still challenge the accuracy of ***his*** specific test results. See *Vega*. In either instance, the admission or denial of such evidence is predicated on the requirement that standards are adopted and followed that support reliance on the results received from the testing process. No such standards exist in this case.

{¶ 33} In any event, I concur fully with the majority opinion and discuss admissibility and reliability concerns so that they may be more fully explored at a later date.