[Cite as *Davis v. Cleveland*, 2013-Ohio-2914.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99187**

## CHEMECA DAVIS

PLAINTIFF-APPELLANT

vs.

## CITY OF CLEVELAND, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-639354

**BEFORE:** Keough, J., Stewart, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 3, 2013

**ATTORNEY FOR APPELLANT**

James G. Dawson
4881 Foxlair Trail
Richmond Hts., Ohio 44143

**ATTORNEYS FOR APPELLEES**

Barbara Langhenry
Director of Law
By:   Mark R. Musson
        Catherine Ma
Assistant Directors of Law
City of Cleveland
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, J.:

{¶1} On August 29, 2007, defendant-appellee, city of Cleveland, issued a notice of liability pursuant to Cleveland Codified Ordinances ("C.C.O.") 413.031 to plaintiff-appellant, Chemeca Davis, claiming that an automated camera photographed a vehicle registered in her name traveling at a speed in excess of the posted speed limit. *See Davis v. Cleveland*, 8th Dist. No. 92336, 2009-Ohio-4717, ¶ 1 (reversed trial court's decision dismissing administrative appeal because court did not give Davis notice of its intent to dismiss for failing to file her assignments of error).

{¶2} Davis appealed the notice of liability pursuant to C.C.O. 413.031(k). At the hearing, the hearing officer set forth the facts and allegations surrounding the issuance of the notice of liability. Davis did not testify; rather, her counsel set forth 12 "objections and arguments" by way of "Exhibit B." Following a brief overview of the objections and arguments, the hearing officer found Davis liable for the speed violation and ordered her to pay the $100 fine.

{¶3} Pursuant to R.C. 2506.01, Davis filed an administrative appeal with the court of common pleas, asserting factual challenges and alleging various procedural and constitutional violations. Davis requested a hearing pursuant to R.C. 2506.03, claiming that the testimony given before the hearing officer was not made under oath and that the hearing officer did not file with the transcript conclusions of fact. Although the trial court initially granted Davis's request for a hearing, it later denied her motion upon a request for reconsideration by the city. Accordingly, the administrative appeal was

decided on by the arguments contained in the briefs submitted by both parties.

**{¶4}** The trial court issued a written decision finding that the court did not have jurisdiction to address the facial constitutional challenges made to C.C.O. 413.031, but did find that the hearing officer's decision was not unconstitutional as applied to Davis, and the decision was supported by substantial, reliable, and probative evidence.

**{¶5}** Davis now appeals, raising four assignments of error.

## I. Standard of Review

**{¶6}** Appellate courts will only review the judgment of the trial court to determine if the lower court abused its discretion in finding that the administrative order was supported by reliable, probative, and substantial evidence. *Cleveland v. Posner*, 188 Ohio App.3d 421, 2010-Ohio-3091, 935 N.E.2d 882, ¶ 12 (8th Dist.), citing *Wolstein v. Pepper Pike City Council*, 156 Ohio App.3d 20, 2004-Ohio-361, 804 N.E.2d 75 (8th Dist.).

The standard of review is limited to reviewing the judgment of the trial court on questions of law, and we do not review any findings of fact or weigh the evidence in administrative appeals. *Posner* at ¶ 11. To the contrary, when a party appeals an administrative agency's decision to the trial court, the court "considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Id*. at ¶ 10, quoting *Henley v. Youngstown Bd. of Zoning*

*Appeals*, 90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433.

## II. C.C.O. 413.031(g) — Notice Requirement

**{¶7}** Davis's first assignment of error states:

The trial court erred to the prejudice of the appellant and abused its discretion by holding that the city of Cleveland complied with the mandates of C.C.O. 413.031(g) when in fact the city failed to post a required sign on Bessermer Avenue that would have apprised the appellant that she was approaching an area where an automated camera was monitoring for speed violators.

**{¶8}** Under this assignment of error, Davis challenges both "notice" requirements under C.C.O. 413.031(g) — notice to the motorist and notice to the public. C.C.O. 413.031(g) provides, in relevant part,

The Director of Public Safety shall cause the general public to be notified by means of a press release issued at least thirty (30) days before any given camera is made fully operational and is used to issue tickets to offenders. Before a given camera issues actual tickets, there shall be a period of at least two (2) weeks, which may run concurrently with the thirty (30) day public-notice period, during which only "warning" notices shall be issued.

At each site of a red light or fixed speed camera, the Director of Public Works shall cause signs to be posted to apprise ordinarily observant motorists that they are approaching an area where an automated camera is monitoring for red light or speed violators. Mobile speed units shall be plainly marked vehicles.

**{¶9}** Davis contends that the city offered no evidence before the hearing officer that it complied with the mandatory requirements of C.C.O. 413.031(g); thus, it failed to establish a necessary element of the speeding offense. In support of her assignment of

error, Davis relies on this court's decision in *Cleveland v. Barnes*, 8th Dist. No. 94502, 2010-Ohio-6164, which determined that the plain words of C.C.O. 413.031(g) require that all sites of a red light or fixed speed camera, whether stationary or mobile, shall have signs posted apprising motorists that they are approaching an area where an automated camera is monitoring for red light or speed violations. *Id*. at ¶ 25-28.

{¶10} However, we find the facts in *Barnes* distinguishable from the facts in this case. In *Barnes*, the issue of notice and sign placement was raised before the hearing examiner in his appeal from the notice of liability; thus, preserving the issue in his administrative appeal before the trial court and further appeal to this court.

{¶11} Davis, however, did not raise notice and sign placement before the hearing examiner, thus, waiving the issue on appeal. The only factual challenge to C.C.O. 413.031 Davis made before the hearing examiner was "11. The Notice of Liability issued to the Defendant failed to comply with the mandatory requirements of Cleveland Codified Ordinance [Section] 413.031(f). Accordingly, said Notice of Liability is unenforceable." No further explanation was given by Davis how the notice failed to comply with this section. And the only argument Davis made regarding "notice" was whether a speed limit sign was present "as a motorist approaches 7216 Bessemer [sic] Avenue eastbound." Davis did not make any argument before the hearing officer challenging section (g) of C.C.O. 413.031.

{¶12} Accordingly, we find that because Davis failed to raise this issue before the hearing examiner, she has waived the issue on appeal. See *Posner v. Cleveland*, 8th

Dist. No. 95997, 2011-Ohio-3071. Davis's first assignment of error is overruled.

### III. C.C.O. 413.031(f) — Placement of Automated Camera

**{¶13}** In her second assignment of error, Davis contends that:

The trial court erred to the prejudice of the appellant and abused its discretion by holding that the city of Cleveland complied with the mandates of C.C.O. 413.031(f) when in fact the city failed to present any competent evidence that the placement of the automated camera on Bessermer Avenue was made on the basis of sound professional traffic engineering and law enforcement judgments.

**{¶14}** C.C.O. 413.031(f),"Selection of Camera Sites," provides:

The selection of the sites where automated cameras are placed and the enforcement of this ordinance shall be made on the basis of sound professional traffic engineering and law enforcement judgments. Automated cameras shall not be placed at any site where the speed restrictions or the timing of the traffic signal fail to conform to sound professional traffic engineering principles.

**{¶15}** Although Davis made reference, without explanation, to this section before the hearing officer and in her administrative appeal complaint filed with the trial court, she abandoned this argument and issue in her brief submitted before the trial court. Accordingly, we could find that she has waived the argument on appeal.

**{¶16}** Even addressing her assignment of error, Davis is incorrect in her assertion that proof of compliance with C.C.O. 413.031(f) is an element of the offense that must be considered before liability can be found. Rather, liability for a speeding offense under C.C.O. 413.031 arises "when a vehicle is operated at a speed in excess of the limitations set forth in [C.C.O.] 433.03." It is prima facie unlawful for a vehicle to exceed the posted speed limit. C.C.O. 433.03(c) and (k). Accordingly, proof that the placement of

the automated camera was based on sound judgment, is not an element of the offense.

**{¶17}** Davis failed to provide any evidence before the hearing officer that the city or its departments failed to exercise proper judgment in its decision to place a mobile automated camera on Bessermer Avenue on the day the automated camera captured a photograph of her vehicle traveling in excess of the posted speed limit. Absent any evidence to the contrary, we presume regularity with the city's compliance with this challenged section. *See, e.g., Barnes*, 8th Dist. No. 94502, 2010-Ohio-6164, at ¶ 29.

**{¶18}** Accordingly, Davis's second assignment of error is overruled.

### IV. R.C. 2506.03 Hearing

**{¶19}** Davis contends in her third assignment of error that, "[t]he trial court erred to the prejudice of the appellant and abused its discretion by denying the appellant a hearing required by R.C. 2506.03 which would have produced a preponderance of substantial, reliable, and probative evidence on the whole record."

**{¶20}** With the trial court, Davis's request for a hearing was made pursuant to R.C. 2506.03(A)(3) and (5) — the testimony was not given under oath and the hearing officer failed to file with the transcript conclusions of fact supporting the decision. On appeal, however, Davis expands her argument to include sections (1) and (4) of R.C. 2506.03 as a basis for why the trial court should have granted her request for a hearing to submit additional evidence. Accordingly, our discussion will be limited to the challenges made only with the trial court.

**{¶21}** R.C. 2506.03 provides, in pertinent part,

(A) The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:

* * *

(3) The testimony adduced was not given under oath.

* * *

(5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

(B) If any circumstance described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and additional evidence as may be introduced by any party. At the hearing, any party may call, as if on cross-examination, any witness who previously gave testimony in opposition to that party.

{¶22} Davis argues that the trial court abused its discretion in denying her a hearing under R.C. 2506.03(B) because the hearing officer's "testimony" was not given under oath. *See* 2506.03(A)(3). First, we note that Davis did not object to the hearing officer presenting the facts at the hearing. Moreover, the record shows that the hearing officer only read into the record the allegations contained in the notice of liability and provided the Cleveland Police Department Photo RADAR Digital Mobile Unit Deployment Log showing the calibration and testing of the radar device performed by the reviewing officer. The record reflects that no other testimony was provided by the hearing officer, and Davis does not identify what testimony was given by the hearing

officer beyond the notice of liability and deployment log. No witnesses testified, including Davis. Accordingly, this argument is without merit.

**{¶23}** Davis also argues that the trial court should have conducted a hearing pursuant to R.C. 2506.03(A)(5) because the hearing officer failed to file with the transcript any conclusions of facts supporting the decision. Davis presents this court with no case authority supporting her argument, and a review of her motion with the trial court reveals the same.

**{¶24}** R.C. 2506.03(A)(5) does not require the conclusions of fact to take any specific form, and an administrative agency "is not required to file a separate document entitled 'Conclusions of Fact.'" *Concerned Richfield Homeowners v. Planning & Zoning Comm.,* 9th Dist. No. 25033, 2010-Ohio-4095, ¶ 10; *see also CBS Outdoor, Inc. v. Cleveland Bd. of Zoning Appeals*, 8th Dist. No. 98141, 2013-Ohio-1173, ¶ 37. "Instead, the trial court was required to look at the 'face of that transcript' to determine if the [hearing officer] failed to include its reasons in support of its final decision." *Id.* at ¶ 10, citing R.C. 2506.03(A).

**{¶25}** In this case, the trial court issued a written decision stating its reasons for granting the city's motion to reconsider granting Davis's motion for an R.C. 2506.03 hearing. The court reasoned: "[a]fter reviewing the record and the parties' briefs, the court finds [the city] filed sufficient conclusions of fact with the administrative record and [Davis] waived the right to argue that the hearing officer's testimony was not given under oath."

**{¶26}** "'Obviously, parties should be informed of the reasons for decisions, and courts should have something to review.'" *Concerned Richfield Homeowners* at ¶ 11, quoting *Shelly Materials v. Daniels*, 2d Dist. No. 2002-CA-13, 2003-Ohio-51, ¶ 23. However, Davis fails to set forth any explanation why the "face of that transcript" does not inform her of the reasons for the hearing examiner's decision and the trial court with something to review, thus not constituting conclusions of fact.

**{¶27}** The transcript reveals that the trial court's decision was not in error. The hearing officer stated on the record the notice of liability, which is considered prima facie evidence, and presented the deployment log. Although Davis's counsel vaguely read his "objections and arguments" on the record, the hearing officer determined that the arguments, which were primarily constitutional challenges to C.C.O. 433.031, were insufficient to rebut the prima facie evidence. Accordingly, the transcript contained sufficient facts and conclusions to enable the trial court to make a decision.

**{¶28}** Davis's third assignment of error is overruled.

## V. Trial Court's Affirmance of Administrative Decision

**{¶29}** In her final assignment of error, Davis asserts that "[t]he trial court erred to the prejudice of the appellant and abused its discretion by ruling that the decision rendered by the hearing officer was supported by the preponderance of substantial, reliable and probative evidence on the whole record." Within this assignment of error, Davis actually challenges the procedures of the hearing, not the underlying determination.

**{¶30}** Davis contends that her "right to procedural and substantive due process

and other Ohio constitutional rights 'as applied' were violated" by the hearing officer.   In support of her contention, she alleges 12 generalized "violations."   As the city's brief succinctly states, Davis's challenges can be grouped as:   (1) the role of the hearing examiner; (2) the failure to apply the Rules of Evidence; (3) the "unfairness" of designating the notice of liability as prima facie evidence of the facts; and (4) that Davis was not afforded the procedural due process afforded in criminal trials for speeding violations.

{¶31}   These generalized statements contain little, if any, supporting case law or statutory authority and no further explanation is given by Davis how her rights were violated.   Accordingly, we can decline to address most of these alleged "violations" because Davis fails to support her position with legal authority.   App.R. 16(A)(7).   Even if we addressed her statements, a majority of the arguments made have been addressed and rejected by this court or the United States District Court for the Northern District of Ohio, Eastern Division.   *See Gardner v. Cleveland*, 656 F.Supp.2d 751, 762-763 (N.D.Ohio 2009) (absent any evidence of bias, no violation of due process or separation of powers when hearing officer acts as both prosecutor and judge in administrative proceedings); *Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476 (8th Dist.) (administrative hearings are not bound by the strict rules of evidence; notice of liability, the automatic traffic enforcement camera photographs, and logbook showing device calibration are probative and substantial evidence as to whether a motorist is speeding).

{¶32} Davis's only legally supported argument under this assignment of error concerns her inability to challenge the scientific validity, accuracy, and reliability of the city's automated traffic camera system and radar device. She contends that no evidence was presented that the "K-band" radar device worked on scientific principles, was reliable, could actually measure the speed of a moving object, was used properly according to the manufacturer's instructions, and that it was properly calibrated.

{¶33} First, we note that Davis does not make these challenges as they apply to the notice of liability that she received. Additionally, the record is devoid of any instance where Davis attempted to make these challenges before the hearing officer. Accordingly, we find she waived this challenge on appeal. *See, e.g., Posner*, 8th Dist. No. 95997, 2011-Ohio-3071, at ¶ 15, fn. 1; *Cleveland v. Cord*, 8th Dist. No. 96312, 2011-Ohio-4262, ¶ 19.

{¶34} Insofar as Davis contends she was unable to subpoena the officer who reviewed the alleged speeding infraction to challenge the radar device, we find that Davis did not attempt to subpoena the officer to the hearing on the notice of liability. Moreover, she made no argument nor did she attempt to introduce any evidence to challenge that the automated camera system or radar device used was unreliable, not properly calibrated, unscientific, or inaccurate.

{¶35} In this case, the calibration of the automated traffic enforcement radar camera system that captured the violation depicted in the notice of liability issued to Davis was tested and confirmed by a certified Photo RADAR operator who also attested

to the correct setup, test, and operation of the system's equipment before and after the violation occurred. Absent any evidence or argument to the contrary, the trial court did not abuse its discretion in finding that the hearing officer's decision finding Davis civilly liable for the speeding infraction was supported by a preponderance of substantial, reliable, and probative evidence.

{¶36} Davis's final argument contends that C.C.O. 413.031 is unconstitutional "as applied" because the ordinance provides that the "content of the ticket shall constitute a prima facie evidence of the facts it contains." Contrary to the assertion, this is not an "as applied" constitutional challenge; rather, it is a facial constitutional challenge to the City's ordinance. As such, Davis is not permitted "within [a] Chapter 2506 appeal to challenge the facial constitutionality of [an ordinance]. *See Cord*, 8th Dist. No. 96312, 2011-Ohio-4262, *Roy v. Cleveland Bd. of Zoning Appeals*, 145 Ohio App.3d 432, 437, 763 N.E.2d 240 (8th Dist.2001). The trial court properly rejected this argument.

{¶37} Accordingly, Davis's final assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, J., CONCURS (SEE ATTACHED CONCURRING OPINION);
MELODY J. STEWART, A.J., CONCURS

SEAN C. GALLAGHER, J., CONCURRING:

{¶39} "There is no such thing as a perfect person, a perfect machine, or a perfect computer operating system."[1]

{¶40} I concur fully with the majority opinion but write separately to address concerns about the implementation of so-called "red light cameras" in municipalities like Cleveland.

{¶41} The majority opinion correctly points out that many of Davis's claims were not properly raised before the hearing examiner and are therefore waived. *See Cleveland v. Posner,* 18 Ohio App.3d 421, 2010-Ohio-3091, 935 N.E.2d 882 (8th Dist.).

{¶42} Despite this, there is one unsettling aspect of this and other automated camera cases that I originally outlined in my concurring opinion in *Parma v. Dempsey,* 8th Dist. No. 96351, 2011-Ohio-6624.

{¶43} The use of automated technology in society is increasing. Surprisingly, the admission of evidence derived from these new technologies is often unchallenged in Ohio

---

[1]*State v. Warren & Hayes*, Athens M.C. Nos. 2011TRC01734 and 2011TRC02434 (June 29, 2011) (Grimm, J.).

courts. Often, as here, there is a presumption that everything works and is reliable.

**{¶44}** As in *Dempsey,* which dealt with a Parma ordinance, the Cleveland ordinance has no standards for admissibility or reliability. There is nothing referencing source codes for operation, margins of error, calibration (if applicable), radio interference (if applicable), weather, or other potential considerations that may affect the result. If the equipment is turned on and gives a result that the operator can explain, the motorist is liable. Even the calibration records offered in this case reveal little if the fundamental workings of the machine are not addressed at the outset.

**{¶45}** As I stated in *Dempsey,*

> Analogous to municipal governments embracing automated traffic enforcement technology is Ohio's reliance on technology to enforce drunk driving under Ohio's O.V.I. laws. R.C. 4511.19(D)(1)(b) creates a mandatory duty to follow Ohio Department of Health regulations for admission of test results involving bodily fluids for alcohol levels as outlined under the Ohio Administrative Code. Unlike O.V.I. enforcement, automated speed technology is not subjected to any independent review prior to implementation. Apparently, in this case no independent judicial review of the information contained in the "Statement of Technology" covering the reliability of this technology or the equipment occurred. Further, no administrative agency of the local government "vetted" this technology or the equipment to ascertain its reliability. The city of Parma entered into a contract with a private vendor, and inherent in this contract is the presumption that the science, the equipment, and the operator are apparently infallible.

*Dempsey,* 8th Dist. No. 96351, 2011-Ohio-6624, ¶ 28.

**{¶46}** I see the Cleveland ordinance at play in this case in much the same light.

**{¶47}** I am not suggesting that a *Daubert* hearing is required in every automated traffic enforcement case. *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 113

S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Miller v. Bike Athletic Co.,* 80 Ohio St.3d 607, 687 N.E.2d 735 (1998). Nor am I ignoring the fact that a vendor may be able to produce test results from the manufacturer that trumpet the accuracy and reliability of the device in question. Despite this, at some point courts cannot abdicate their responsibility to independently determine what evidence is admissible based on some objective standards of reliability.

{¶48} Further, Evid.R. 104 and 402 address general admissibility and relevance questions about evidence. Evid.R. 702 provides even more specific guidance. *See State v. Warren & Hayes*, Athens M.C. Nos. 2011TRC01734 and 2011TRC02434 (June 29, 2011) (Grimm, J.).

{¶49} At section (C), the rule states:

To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

Evid.R. 702(C).

{¶50} No such judicial or administrative requirements are set for automated camera enforcement as used in this case.

The Ohio Supreme Court, in a 4-3 decision, in 1984, held that an

accused did not have a constitutional right to offer expert testimony to challenge the reliability of intoxilyzers in general. *State v. Vega* (1984), 12 Ohio St.3d 185, 465 N.E.2d 1303, 12 Ohio B. 251. Nevertheless, a defendant could still challenge the accuracy of his specific test results. See *Vega*. In either instance, the admission or denial of such evidence is predicated on the requirement that standards are adopted and followed that support reliance on the results received from the testing process. No such standards exist in this case.

*Dempsey,* 8th Dist. No. 96351, 2011-Ohio-6624, ¶ 32.

**{¶51}** At some point, members of the judiciary are going to have to address the threshold questions of admissibility for new technologies that are rapidly being implemented in our society.